CROCKER'S HEIRS v. CROCKER'S HEIRS.

Opinion delivered December 18, 1922.

1. WILLS—UNDUE INFLUENCE—SUBMISSION OF ISSUE.—In a will contest it was not error to submit the issue of undue influence where such submission would have been an invitation to speculation and conjecture on the part of the jury.

2. EVIDENCE—OPINIONS OF MEDICAL EXPERTS AS TO SANITY.—In a will contest it was not error to permit graduate physicians of a number of years' experience as general practitioners to testify as to

testator's sanity, though they had made no special study of insanity.

3. EVIDENCE—OPINIONS OF NON-EXPERTS AS TO SANITY.—In a will contest where the issue was as to testator's sanity, persons not experts who came into intimate contact with testator may testify their opinions as to his sanity.

4. EVIDENCE—HYPOTHETICAL QUESTIONS.—Hypothetical questions must embrace all the undisputed facts which are essential to the issue, but they may also include any relevant fact which competent testimony tends to establish and is sufficient to establish if credited by the jury.

5. WILLS—CONTEST—INSTRUCTION.—Where testator left his entire estate to his wife, it was not error, in a contest by testator's heirs against heirs of the wife, to refuse an instruction advising what disposition would be made of testator's property if the will was not upheld.

Appeal from Woodruff Circuit Court, Northern District; *J. M. Jackson,* Judge; affirmed.

*E. M. Carl-Lee* and *Mehaffy, Donham & Mehaffy,* for appellants.

There was sufficient evidence of undue influence to require submission of the case to the jury. 106 N. W. 610; 88 N. W. 394; 28 S. 687; 29 Ark. 151; 40 Cyc. 1337-1338; 109 N. W. 776; 128 S. W. 1092; 45 S. W. 456; 28 Atl. 400; 95 S. W. 200; 94 S. W. 883; 32 Atl. 255; 36 Atl. 139; 62 Atl. 716; 17 S. 516; 28 R. C. L. 405-407; 88 N. W. 394; 90 N. W. 682; 103 N. W. 502; 59 N. Y. S. 421; 87 Ark. 148; 191 S. W. 963; 226 S. W. 35; 113 N. E. 958; 171 S. W. 156; 177 Pac. 451; 231 S. W. 630. The opinion of non-expert witnesses should have been excluded. 103 Ark. 196; 61 Ark. 245; 15 Ark. 555; 64 Ark. 523; 76 Ark. 286; 54 Ark. 588; 106 N. W. 610; 19 Ark. 533; 39 L. R. A. 715, note; 118 N. E. 906; 64 Ark. 523; 91 Pac. 542. The hypothetical questions assumed facts not in evidence, and this is a ground for reversal. 87 Ark. 243.

*Harry M. Woods* and *Roy D. Campbell,* for appellees.

Influence springing from natural affection is not undue influence. 93 Ark. 75; 49 Ark. 367; 87 Ark. 148. The opinions of non-experts are admissible as to mental

capacity when all facts upon which the opinions are based are in evidence. 97 Ark. 457; 61 Ark. 245; 103 Ark. 220; 136 Ark. 156. The instructions given have been approved. 103 Ark. 187; 97 Ark. 457; 87 Ark. 243. The hypothetical questions were properly admitted. 64 Ark. 532; 94 Ark. 75; 23 Ark. 730; 21 Ark. 349.

SMITH, J. This case is a contest of the will of L. J. Crocker, made about ten days before his death. The testator was seventy-eight years old, and left no children. He devised his entire estate to his wife, Gabriella Crocker, who survived her husband only a short time, and the litigation is between the heirs of the husband and the heirs of the wife.

It was the theory of the contestants that the testator had senile dementia, and that the manifestations of that infirmity became more pronounced as the testator approached his end, and that he did not have the mentality essential to constitute testamentary capacity at the time the will was executed. There was also certain testimony which contestants say was sufficient to raise an issue for the jury as to whether the execution of the will was procured by undue influence, an issue which the court refused to submit, upon the ground that the testimony was insufficient to warrant the submission of that issue to the jury.

There was testimony tending to support the contention of contestants that the testator did not possess testamentary capacity, and, had the jury so found, we would not disturb the verdict as being without testimony legally sufficient to support that finding. Two physicians testified as experts on behalf of the contestants and expressed the opinion, upon the hypothetical question submitted to them, that the testator was insane. Those physicians never knew the testator personally.

Three other physicians who knew the testator testified as experts and expressed the contrary opinion in response to the hypothetical question submitted to them.

So far as the expert testimony is concerned, it may be said that the usual difference of opinion existed which is found in all cases where witnesses undertake to testify as experts.

Error is assigned in admitting the testimony of the three physicians who expressed the opinion that Crocker was sane, for the reason that they were not shown to be properly qualified, and because the hypothetical question was not itself a proper one. Exceptions were also saved to the giving and to the refusal to give certain instructions.

The issue of the testamentary capacity was submitted on instructions asked by the respective parties, which declared the law of that subject elaborately and correctly, and no objection is urged to the declarations of the law on that subject. It is insisted, however, that the court erred in refusing to submit the issue of undue influence to the jury.

The testimony which it is said required the submission of that issue was substantially to the following effect: The will gave the entire estate to the widow, thereby excluding all persons of the testator's blood from participation in the estate. The testimony of a man named Matkins that he had known Crocker for seven or eight years before his death, and that Dr. McGuire, the attending physician, came to witness' store about a week or ten days or two weeks before the execution of the will here in question, and dictated a will, which witness wrote, and, after writing, returned to Dr. McGuire, and a few days thereafter witness was at Crocker's house, and went into the sick-room with Mrs. Crocker, who aroused her husband and asked him about making the will, and told him he ought to make a will, and he repeated the word "will" two or three times and went on talking about something else, and it was decided no will would be executed that day, and witness left the Crocker home. It may be said that much of the testimony of Matkins was categorically denied by persons in position to know its truth; but we

must, of course, assume that it was true and would have been believed by the jury. The remaining testimony tending to sustain the allegation of undue influence was that on one occasion Dr. McGuire had said to the testator that he (McGuire) had made a will and under it had given everything to his wife.

The testimony shows that the testator and his wife had grown old together, and that, although in their early married life there had been a separation, there had been a complete reconciliation, and for thirty years or more they had lived happily together. Two children were born to the union, but both of them died in infancy. Later a child was adopted, but it too died in infancy. The testator's next of kin were some nephews and nieces, and the one living nearest resided in Missouri, and for many years there had been practically no communication between Crocker and his relatives. Of all the nephews and nieces only three had ever visited in Crocker's home, and these three had only made one visit each. Several disinterested witnesses testified that they had heard Crocker say that his relatives meant nothing to him; that he and his wife had together accumulated what they had, and that the survivor would take it all. Crocker and his wife had in fact taken the title to some lands as tenants by the entirety.

In his testimony Dr. McGuire admitted that he and Crocker had more than once discussed the subject of making wills. They were neighbors and friends, and witness was the family physician, and testified that he entered the army and went to France, and before going he told Crocker that he (witness) had made a will devising to his wife all the property he owned. Nothing further was said on the subject of making a will until after witness had returned from France, when Crocker told him that he was going to make a will and give his wife his property, and he requested that he be advised and reminded of this purpose if, in the opinion of the witness, he became seriously ill.

It is undisputed that the will which Matkins said he wrote is not the will which Crocker executed. The circumstances under which the will offered for probate was written and executed are these. Crocker sent for Judge Summers, of Augusta, who for many years had been his friend and attorney. Summers testified that Crocker had spoken to him about writing the will several months before the will was executed, and had told him then that he wanted his wife to have all of his property, as he was under no obligation to any of his relatives. This witness detailed the conversation he had with Crocker at the time, and stated that Crocker sat up in bed, unassisted, and signed the will. Witness asked how the will should be written, and Crocker answered: "Everything goes to Gaby, my lands, merchandise and bank stock, and everything goes to her, just make it that way." Crocker told witness where to find pen and paper, and after the execution of the will Crocker called his wife into the room and told her he wanted her, after his death, to give Mr. Stacy's son one of the fillies in his lot. Stacy was one of the attesting witnesses to the will, but he died before the trial in the court below. Summers further testified that he discussed with Crocker the details of other matters of business, and after a visit of about an hour and a half he was told by the physician that Crocker was talking too much, and was overtaxing his strength, and witness left and returned home.

There was testimony by a negro house-man that, after the execution of the will, Crocker left his bed and went into his lot to see about some of his stock. There is a conflict, however, about this statement, as the testimony on the part of the contestants is that Crocker was too weak for some time before his death to leave his room.

We think, under the testimony stated, that the court did not err in refusing to submit the question of undue influence. The statement of Dr. McGuire as to what he intended to do about his own will was made two years before, and at a time when there appears to have been no

question about Crocker's testamentary capacity, and this certainly was not undue influence. Assuming that the jury would have accepted Matkins' testimony as true, we think it insufficient to support a finding that undue influence had been exerted in procuring the execution of the will. There was nothing surreptitious or covert about the remark which Matkins said Mrs. Crocker made to her husband. Besides, that will was not executed. The will offered for probate was prepared by Judge Summers, and a consideration of the testimony attending its execution leads to the conclusion that there was no testimony justifying the submission of the issue of undue influence.

The case of *McCulloch* v. *Campbell,* 49 Ark. 367, is one of the leading cases on the subject of testamentary capacity and undue influence in the execution of wills, and on this last subject it was there said: "As we understand the rule, the fraud or undue influence which is required to avoid a will must be directly connected with its execution. The influence which the law condemns is not the legitimate influence which springs from natural affection, but the malign influence which results from fear, coercion, or any other cause that deprives the testator of his free agency in the disposition of his property. And the influence must be specially directed toward the object of procuring a will in favor of particular parties. It is not sufficient that the testator was influenced by the beneficiaries in the ordinary affairs of life, or that he was surrounded by them and in confidential relations with them at the time of its execution. *Rutherford* v. *Morris,* 77 Ill. 397; 1 Redfield on Wills, 3d ed., ch. 10, § 30, pp. 523-4."

When that test is applied to the testimony here, we think it would have been an invitation to speculation and conjecture on the part of the jury to say whether there had been undue influence.

As to the circumstance that the will excluded the blood kin of the testator from participation in his estate, it may be said that, according to the testimony of a

number of disinterested witnesses, this appears to have long been the fixed purpose of the testator.

Error was assigned in allowing Drs. Dungan, McGuire and Brewer to express the opinion, based upon the hypothetical question submitted to them, that Crocker was sane. These doctors were graduates of reputable medical colleges, and were all actively engaged in the practice of their profession, and Dr. Dungan had practiced his profession for twelve years and had for two years been connected with the State Hospital for Nervous Diseases at Little Rock. The other two doctors admitted that they had made no special study of insanity, and had had no experience in the study and treatment of that disease other than that encountered in the general practice. Dr. Brewer had been engaged in the general practice for nineteen years. Dr. McGuire was the attending physician, and had been actively practicing medicine since 1908.

We think no error was committed in admitting the testimony of these doctors. They were graduate physicians, with an experience of from twelve to nineteen years, and had had the benefit of the observation and study of the disease of insanity which came to them as general practitioners within that time, although two of them admitted they had made no special study of the disease.

Of similar testimony Judge BATTLE said: "The question asked Dr. Buchanan and his answer to the same were competent evidence. He was a graduate of a medical school, and a physician of six years' experience. Although he had no actual experience with respect to the subject of investigation, yet he can express an opinion as an expert on a matter pertaining to his profession, based upon knowledge derived from reading books upon the subject. It is for the jury to determine what value his opinion is entitled to under the circumstances, and to give it such weight as they think it deserves. *Green v. State,* 64 Ark. 532." *Arkansas S. W. Rd. Co.* v. *Wingfield,* 94 Ark. 79.

Objection was made to the testimony of a number of non-experts who testified that Crocker was sane, the ground of the objection being that they did not detail the facts on which they based their opinion. This is, of course, a prerequisite before a non-expert can express an opinion on one's sanity; but we think the objection not well taken on the facts. Most of these witnesses were the persons who came most intimately in contact with the testator, and their recital of this contact furnished the proper basis for the admission of their testimony.

A number of objections are made to the hypothetical question submitted to the doctors who testified that Crocker was sane. One of these objections was that it assumed as true certain facts which were without support in the testimony, the chief of these being that Crocker had for twenty years before his death enjoyed normal health, and that Crocker had never had a stroke of paralysis. Dr. McGuire testified that for a number of years he had been the physician in Crocker's family, but that Crocker was himself rarely sick; and he also testified that Crocker had never, to witness' knowledge, had a stroke of paralysis, and that witness knew the clinical history of Crocker, and there was no stroke of paralysis in that history

The assumption that one had enjoyed normal health for twenty years does not mean that one has not had serious illness within that time, for most persons within that span would have some serious illness, and the testimony of Dr. McGuire warranted the assumption in the hypothetical question that Crocker had had no paralytic stroke. Hypothetical questions must embrace all the undisputed facts which are essential to the issue; but, after embracing them, the questioner may include any relevant fact which competent testimony tends to establish and is sufficient to establish if credited by the jury. *Taylor* v. *McClintock*, 87 Ark. 243; *Metropolitan Cas. Ins. Co.* v. *Chambers*, 136 Ark. 93.

Under this test we think no error was committed in permitting the hypothetical question propounded by the proponents of the will to be used.

An instruction numbered 6, given at the request of the proponents, recited facts which the jury might properly consider in making up their verdict, and one of these was the disposition which the testator contemplated making of his property before executing the will. The objection to the instruction is that it did not limit the consideration of the jury to any particular time. No specific objection to this effect was made. Besides, the testimony on that subject did not relate to a time so far distant from the date of the will as to indicate that it was irrelevant as being too far removed to show the testator's purpose at the time the will itself was executed.

The court refused to give an instruction requested by contestants advising the jury what disposition would be made of Crocker's property if the will was not upheld. No error was committed in this respect, as the very purpose of the will, if there was one, was to change the order of the devolution of the property—a fact which the jury, of course, knew—and the jury should have decided whether there was a will without any consideration of the equities of the case. If Crocker had the testamentary capacity to make a will (and that was the question submitted to the jury), then it was no concern of theirs that the testator had, by his will, given property to his wife which, upon her death, went to her heirs, but which, without the will, would have gone to his heirs.

Certain other exceptions in regard to giving and refusing instructions are urged, but we do not discuss them, for the reason that, in our opinion, the case was properly submitted upon numerous instructions given at the request of both parties, which declared the law applicable to the issue clearly and fully.

No error appearing, the judgment is affirmed.