NORWOOD *v.* GLOVER, JUDGE.

5-2167           338 S. W. 2d 198

Opinion delivered September 19, 1960.

*Amis Guthridge* and *Roy Finch, Jr.,* for appellants.

*Joseph C. Kemp* and *Perry V. Whitmore,* for appellee.

J. SEABORN HOLT, Associate Justice. This appeal comes from a judgment of the Pulaski Circuit Court denying appellants' petition for a Writ of Prohibition against Judge Quinn Glover, a municipal judge of Little Rock, Arkansas. Appellants were accused of committing certain misdemeanors triable in the Little Rock Municipal Court. While the cases were pending, appellants, on October 1, 1959, filed applications for change of venue, alleging that the Judge of the Court was so prejudiced against them that they could not obtain a fair and impartial trial. Accompanying appellants' motions were affidavits of two persons who stated in their opinion the appellee was so prejudiced against the appellants that they could not obtain a fair and impartial trial before the court. The court overruled appellants' motions after hearing and determining that the affiants used in support of their motions were not credible witnesses as contemplated by Ark. Stats. §§ 22-721—22.

Thereafter, on October 15, 1959, appellants attempted to file an amended and substituted application for change of venue identical to the first application except a substitution of different persons as supporting affiants. The Municipal Court refused to allow this latter application for change of venue as a substituted application for change of venue, but allowed it to be filed as an amendment to the original application of appellants.

Thereafter, on October 28, 1959, appellants filed a petition for a Writ of Prohibition against appellee to prohibit him from continuing to hear the actions. On November 21, 1959, Pulaski County Circuit Court denied the Writ of Prohibition. This appeal followed.

Appellants, for reversal, rely on the following point: "The Court erred in determining as a matter of law that the change of venue statutes, i.e., Ark. Stats., Anno., (1947) §§ 22-721 and 22-722 were not mandatory upon the Municipal Court, and by virtue of the said ruling, the decision of the lower court is contrary to the law, the evidence, and the law and evidence."

We do not agree with this contention. The sections of our statutes relied upon by appellants provide: "Ark. Stats. § 22-721. Change of venue—Affidavit for change—In all Counties within the State of Arkansas wherein there are two or more Municipal Courts the defendant in any criminal case pending either for trial or preliminary examination before any such Municipal Court *may** take a change of venue from the Municipal Court in which said cause is pending to some other Municipal Court within said County; provided, the defendant shall, at or before the commencement of such trial or examination, file in the Municipal Court in which said cause is pending an Affidavit setting forth that the Judge of said Court is a material witness in said cause, or that such Judge is so prejudiced against the defendant that he cannot obtain a fair and impartial trial before said Court." And—"Ark. Stats. § 22-722. Verification of affidavit—of two credible persons—The application of any defendant for a change of venue as herein provided for shall be verified by the

*Emphasis Ours

affidavit of said defendant setting forth the grounds upon which said change of venue is sought, and shall be supported by the affidavit of at least two (2) other credible persons.''

It is conceded by appellee that there is more than one municipal court in Pulaski County and that appellants had the right to apply, *i.e.*, *"may"* apply, for a change of venue upon a proper showing that the trial judge (appellee) was so prejudiced against them that they could not obtain fair and impartial trials before him. However, such change of venue was not a mandatory right in favor of appellants, as they insist, just by merely applying for change of venue. They must go further and support their application for change of venue by the affidavits of at least two other *credible persons* and we hold this appellants failed to do.

We have consistently adhered to the rule which we announced in *Dewein* v. *State,* 120 Ark. 302, 179 S. W. 346, as follows: ''A credible person is one who has the capacity to testify on a given subject and is worthy of belief; and one who lacks knowledge on the subject under investigation is not a credible person to be accepted as worthy of belief in that particular inquiry.'' The use of these words, ''credible persons'', means that the supporting affiants should have fairly accurate information of the facts alleged by appellants seeking a change of venue, *Williams* v. *State,* 162 Ark. 285, 258 S. W. 386, and *Hedden* v. *State,* 179 Ark. 1079, 20 S. W. 2d 119.

Appellants introduced two witnesses. Their first, Mrs. R. G. Taylor, testified: ''Q. Do you think those defendants can get a fair trial in this court? A. No, sir, I do not. Q. Will you tell the Court why you think — believe that, please? A. Your Honor, let me assure you that I mean no reflections on this Court or the Judge of this Court, but due to the circumstances and the environment surrounding this Court I do not believe that they can get a fair and impartial trial. That is the reason that I come with this request. THE COURT: You don't know me, personally? A. I have known of you, Judge Glover, for years; yes, sir. THE COURT: You

hold no prejudice? A. I hold no prejudice against you as judge, let me assure you of that. THE COURT: All right, do you have another witness? MR. GUTHRIDGE: That is sufficient with her? THE COURT: Yes, sir."

Their other witness, A. E. Cooper, testified: "Q. Did you and Mrs. Taylor, who just testified, are you the two who filed those affidavits for each of these defendants in each charge? A. Right. Q. You did? A. Yes sir. Q. Now, you swore that you thought that those defendants could not get a fair and impartial trial in this court, is that true? A. I did. * * * Q. Would you please state to the court on what you base your belief? A. I just think there is a prejudice among the City Officials at this particular time against the defendants. And as I have no interest, personally, in all due respect to the Court, so far as that is concerned, I just think there is a feeling of prejudice against the defendants among the City Officials. Q. You don't think they can get a fair trial in this Court due to that prejudice which you believe is rampant in the City Hall? A. Right. Q. I would like to ask him this, Your Honor. Do you know Judge Glover, personally? A. No, sir, I do not. Q. You don't. In other words, it is based on the atmosphere, not directed against him, personally, is that right? A. Right. Q. As a man? A. Nothing whatever. * * * Q. Mr. Cooper, specifically, is there anything that you know of of your own knowledge regarding the City Hall that would lead you to believe the City Hall has such a prejudice? A. Well, not anything more than has been stated — the atmosphere and the feeling that has been from the newspapers and radio and reports. * * * Q. Have you ever heard anyone in the City Hall express prejudice regarding this particular matter? A. No, I haven't. * * * Q. Do you know of any evidence of Judge Glover's prejudice in this matter? A. No, I do not."

We hold that the testimony of these two witnesses falls far short of proving that Judge Glover was so prejudiced against the appellants that they could not obtain a fair and impartial trial before him. It will be ob-

served that there was no testimony as to any statement or assertions by Judge Glover to anyone indicating any prejudice against appellants. In fact, witness Cooper did not know Judge Glover personally, as indicated by Mr. Cooper's testimony: "Q. Do you know of any evidence of Judge Glover's prejudice in this matter? A. No, I do not." And Mrs. Taylor testified: "THE COURT: You don't know me, personally? A. I have known of you, Judge Glover, for years; yes, sir."

Finding no error, the judgment is affirmed.