JOHNSON v. BEAR BRAND ROOFING, INC.

5-2420

346 S. W. 2d 472

Opinion delivered May 22, 1961.

[Rehearing denied June 5, 1961.]

Paul K. Roberts, for appellant.

Shackleford & Shackleford, for appellee.

ED. F. McFADDIN, Associate Justice. This is a Workmen's Compensation case. The Referee, in the first instance, and the Full Commission, on review, disallowed the claim of Appellant Joe Johnson. The Circuit Court affirmed the Commission; and the case is here on appeal. Several points are argued, but our reversal is because of the error of the Referee and the Commission in refusing to consider a hypothetical question and the answers thereto.

Appellant, Joe Johnson, aged 59 and weight about 135 pounds, was employed by appellee, Bear Brand Roofing, Inc., as a truck driver, and had been so employed for several years. The truck was a 5-ton semi-trailer truck. On Sunday, February 21, 1960, the truck was more than half filled[1] with rolls of roofing and siding; and, in accordance with instructions, Johnson drove the truck from Bearden, Arkansas to deliver the roofing and shingles to purchasers in Tennessee. In addition to the ordinary travel time, some time was lost

---

[1] The witness, N. A. Cross, General Manager of appellee, testified for appellant that the truck was still half loaded after appellant had made the deliveries in Clarksville, Tennessee, and suffered his mishap.

en route because of the necessity of repairs to the lighting system of the truck; and, at midnight, Johnson arrived in Clarksville, Tennessee, where the first shipment was to be delivered. He slept in the sleeping compartment of the truck until about 5:30 a.m. Monday morning, February 22nd, when he awoke and obtained breakfast.

Johnson finally located the Clarksville consignee, W. H. Hall Company; and, since that company was "short of hands," Johnson helped with the unloading. The rolls of roofing were three and one-half or four feet high and were standing on end in the truck, and each roll weighed between fifty and seventy pounds. Johnson's work in the unloading consisted in laying the rolls down on the truck and rolling them to the rear of the truck where other laborers would take them. Approximately an hour was consumed in unloading roofing and siding at the warehouse. Then Johnson, at the request of the foreman of the consignee, drove the truck to a motel construction site and unloaded in the same manner 130 additional rolls of roofing.

After thus unloading the shipment in Clarksville, Johnson started to Eaglesville, Tennessee to deliver his next consignment. While he was still in the city limits of Clarksville, he felt a sensation which he described as if the tie rods of the truck were dragging and he could not turn the wheel. The truck went back and forth across the road and finally left the highway and struck a utility pole. Two Tennessee Troopers witnessed the mishap. Johnson was in a state of semi-consciousness and the Troopers forced his hands from the wheel of the truck. He was taken by ambulance to a Clarksville hospital where he remained approximately four weeks. His attending physician in Clarksville, Dr. James L. McKnight, noted on the report which was introduced in evidence that Johnson was hospitalized because of, "Cerebral Thrombosis with paralysis of extremities of the left side while driving a truck"; and that the injury would be permanent in that there was paralysis of the left side. "Arteriosclerosis" was listed as a contributing factor to what occurred. Dr. McKnight further stated:

"The only significant past history was that of frequent headaches in the past for years." On March 18, 1960, Johnson was transferred from the Clarksville, Tennessee hospital to the Ouachita County Hospital at Camden, Arkansas, where he remained for two weeks under the care of Dr. John P. Thompson.

At the time of the hearing before the Commission on October 3, 1960, Johnson was still disabled; and it was stated that he would probably be disabled for life. He filed his claim for total permanent disability. The claim was denied, both by the Referee and the Full Commission, because the claimant had not "sustained the burden of proof that is upon him to establish a causal connection between his cerebral thrombosis on February 22, 1960, and his work for respondent employer."[2] In order to establish a causal connection between the work and the cerebral thrombosis, Johnson's attorney called Dr. R. B. Robbins of Camden, Arkansas, who answered the hypothetical question, but the answer was entirely ruled out by the Referee and the Full Commission. We hold that the hypothetical question was proper and the answer should have been considered.

The qualifications of Dr. Robbins were admitted; he stated that he had examined Johnson on June 3, 1960; found him suffering with a paralysis of the left side of his body; that Johnson was then disabled and would probably be permanently disabled; and that the paralysis was caused by a brain injury that is commonly known

---

[2] To pin-point the reason for the Commission's ruling, we quote from the opinion of the Commission: "The only doctor who expresses an opinion as to causal connection is Dr. Robbins who did not see claimant until June 3, 1960, and it is clear that his opinion is based upon hypothetical questions to which proper objections were made by counsel for respondents. The hypothetical questions contained statements which were not borne out by the record and were lacking in other material facts. While the case of *Mrs. Alta Hulsizer* v. *Johnson-Brennan Construction Company*, No. 2178, decided by the Arkansas Supreme Court on October 17, 1960, is not precisely on all fours with instant case, we believe there is an analogy to be drawn with regard to a doctor basing his opinion upon statements not supported by the record. In the Hulsizer case, the Arkansas Supreme Court found that the Commission had committed error in considering Dr. Riggall's testimony because he assumed facts not shown in the record. We also find that Dr. Robbins' conclusion as to causation is wholly without a foundation. Claimant's claim is, therefore, denied and dismissed."

as a vascular accident. The first hypothetical question asked Dr. Robbins began: "Doctor, assuming that a man who was fifty-nine years old and who has a medical history of having arteriosclerosis[3] . . ." This question was objected to on several grounds, but the Referee sustained the objection on the ground that the only history of arteriosclerosis was contained in Dr. McKnight's report as a contributing cause, which did not show the arteriosclerosis to have pre-existed the injury. The Referee said: "There is nothing in the history of this case at all in regard to arteriosclerosis."

With the objection thus sustained—and even assuming the Referee was correct in his ruling regarding arteriosclerosis—the attorney for Johnson made his record by asking Dr. Robbins this hypothetical question and receiving the answers as shown:

"Q. Assuming that a man who is fifty-nine years old, Doctor, who weighs approximately one hundred and thirty-five pounds were to drive a four ton semi-trailer truck loaded with three tons of roofing from Bearden, Arkansas, leaving there at ten o'clock in the morning and driving with a few interruptions until twelve that night and arriving say, in Clarksville, Tennessee and assuming that this driver would then go to bed and sleep for five and a half house and assuming that he would then get up and in the course of a couple of hours would begin unloading rolls of felt and other materials which would weigh from sixty to seventy pounds each and would

---

[3] This full hypothetical question is set out as follows: "Doctor, assuming that a man who was fifty-nine years old and who has a medical history of having arteriosclerosis was to drive a heavy laden truck from say Bearden, Arkansas to Clarksville, Tennessee and assuming that he left Bearden at ten o'clock in the morning and drove that truck with some intervals of being stopped because of light failure until ten o'clock p.m. of that same day and assuming then that at twelve o'clock p.m. he would go to bed in his cab and sleep for a few hours, say five and a half hours, and then assuming that upon his arising at five thirty a.m., that he would assist in unloading heavy rolls of felt and materials (to side houses) which weighed say sixty to seventy pounds apiece and assuming that he helped unload maybe two hundred of these rolls and then assuming that about ten thirty or eleven o'clock in the morning of that day that he was to suffer a hemiplegia which you have described, would, in your opinion, his activities of driving the truck for several hundred miles and unloading the truck as has been described, could you state that there would be any connection between his activities and the injuries he sustained?"

unload possibly one hundred to two hundred of these rolls and then at about ten thirty or eleven o'clock would suffer a vascular accident or hemiplegia which you have described, would in your opinion his activity from ten o'clock a.m. on the day of his leaving from his home base until the time that the accident happened, would that in your opinion increase the chances of a hemiplegia or a vascular accident?

"A. The strain of that?

"Q. Yes, sir?

"A. Yes, it could be a contributing factor.

"Q. Then you state that his activities of the strain and stress of this period of activity could have been a contributing cause to his stroke?

"A. That's right. . . .

"Q. His vascular accident?

"A. That's right. . . .

"Q. Assuming that this hypothetical fact that I have presented to you had been before you and that you were treating this man after he had come to the hospital and that you had information that the man had been engaged in this activity before he sustained the injury, would in your opinion his activity have had anything to do with his condition?

"MR. SHACKLEFORD: We renew our objection to this hypothetical question.

"MR. ROBERTS: I am just asking him if he had been treating this man like Dr. McKnight did, would, in his opinion, his activity of the prior twenty-four hours before he suffered this accident, would that activity in his opinion have been a contributing cause to his accident?

"THE WITNESS: Yes, it very definitely could.

"BY MR. ROBERTS:

"Q. Would you say that you believe it was a contributing cause in your opinion?

"A. Well, I would be inclined to think it had something to do with it. I sure would.

"Q. You would be inclined to think that his activity had had something to do with it? Is that your answer?

"A. That's right."

We have copied the salient portions of the record in order to show that the hypothetical question, as finally propounded and answered, omitted all reference to arteriosclerosis and that, after the said hypothetical question was propounded and answered, the attorney for the employer did not specifically point out any other claimed defect in the hypothetical question. The Referee was in error in refusing to consider the hypothetical question and the answers thereto; and such answers would certainly constitute evidence of a causal connection between the work and the cerebral thrombosis. The employer and its insurance carrier offered no testimony, either before the Referee or the Full Commission; but, in the hearing before the Full Commission, the attorney for the employer made a three-page objection to the hypothetical question and answer. We have considered each point mentioned in that three-page objection and find each to be without merit.

We hold that the hypothetical question finally propounded to Dr. Robbins was in compliance with our holding as found in the landmark case of *Taylor* v. *McClintock*, 87 Ark. 243, 112 S. W. 405, and adhered to in all of our subsequent cases.[4] The Commission was of the opinion that our holding in *Hulsizer* v. *Johnson-Brennan Const. Co.*, 232 Ark. 571, 339 S. W. 2d 116, would rule out this hypothetical question. We do not so agree. In the Hulsizer case, the doctor answering the hypothetical question assumed facts contrary to those shown in the record. In the case at bar, the hypothetical

[4] Some of these cases are: *Miss. River Fuel Corp.* v. *Senn*, 184 Ark. 554, 43 S. W. 2d 255; *Williams* v. *State*, 162 Ark. 285, 258 S. W. 386; *Crocker's Heirs* v. *Crocker's Heirs*, 156 Ark. 309, 246 S. W. 6; *Pate* v. *State*, 152 Ark. 553, 239 S. W. 27; *Heinemann* v. *Barfield*, 136 Ark. 456, 207 S. W. 58; *Metr. Cas. Ins. Co.* v. *Chambers*, 136 Ark. 84, 206 S. W. 64; *Scullin* v. *Vining*, 127 Ark. 124, 191 S. W. 924; and *Ford* v. *Ford*, 100 Ark. 518, 140 S. W. 993.

question embraced all of the essential facts involving causal connection between the work and the thrombosis. The question and the answer to it should have been considered.

The judgment of the Circuit Court is reversed and this cause is remanded to the Circuit Court, with directions to remand the cause to the Commission for further proceedings not inconsistent with this opinion.