KANSAS CITY SOUTHERN RAILWAY COMPANY *v.* BULL.

Opinion delivered July 5, 1915.

1. APPEAL AND ERROR—CONFLICTING TESTIMONY.—In an action for an overcharge of freight, where the evidence as to the exact weight is conflicting, it is error for the trial court to direct a verdict for the plaintiff.

2. CARRIERS—DAMAGE TO FREIGHT—STIPULATION AS TO TIME FOR FILING SUIT.—A stipulation in a contract for the shipment of freight, that a claim for damages must be presented within six months after the said damage, is reasonable and enforcible, and when such action is not brought until after a lapse of six months, it is error for the trial court to refuse to direct a verdict for the carrier.

3. CARRIERS—NON-PAYMENT OF FREIGHT CHARGES—RIGHT TO HOLD FREIGHT—RESULTING DAMAGES.—If a railroad company is entitled to charge the freight it demands, it may hold the shipment until it is paid, and damages accruing while it is so held are damages accruing or arising out of the shipment carried by the contract made; and if the carrier demands an excessive amount, and wrongfully holds the shipment to compel payment, it will be liable for its refusal to deliver as a common carrier, and will be answerable therefor only in accordance with a stipulation in the contract of carriage, which limits the time in which such a suit may be brought.

4. CARRIERS—DAMAGE TO FREIGHT—STIPULATION AS TO TIME OF BRINGING ACTION—PLEA OF, IN AMENDED COMPLAINT.—In an action for damages to freight, where the contract of shipment provided that an action for damages must be brought within six months, the defense that the action was brought too late, may be set up in an amended answer, where it was not set up in the original answer.

Appeal from Sevier Circuit Court; *Jefferson T. Cowling,* Judge; reversed.

### STATEMENT BY THE COURT.

Charles Bull brought this suit against the railway company to recover damages for an alleged overcharge upon a shipment of freight from Cimarron, Kansas, to De Queen, Arkansas, and for damages alleged to have been caused to his live stock kept by the company in muddy stock pens at the point of destination, pending the adjustment of the freight charge.

The complaint alleged that the plaintiff paid $88, the full freight charged for the shipment, and that upon arrival at DeQueen, the carrier wrongfully demanded $107.88, which he was finally compelled to pay in order to obtain possession of the shipment.

It alleged, further, that the railroad company unloaded the cattle in muddy and uncovered stock pens, and kept them therein three days, refusing to deliver them, and because of the exposure, they contracted colds, which resulted in coughs and pneumonia, and six of them finally died, to his damage in the sum of $1,000; that the horses were likewise wrongfully kept in said stock pens and damaged in the sum of $200.

The answer denied the allegations of the complaint; alleged that the rate charged was its published tariff rate on file with the Interstate Commerce Commission, and further pleaded that plaintiff was not entitled to recover, not having brought suit within six months, as provided in the bill of lading, the twelfth paragraph of which was specially pleaded, and provides: "It is further agreed that no suit or action against the company for the recovery of any damages accruing or arising out of said shipment, or of any contract pertaining to the same, or the furnishing of facilities for such shipment, shall be sustained in any court of law or equity unless such suit or action shall be commenced within six months next after the loss or damage shall have occurred. The failure to institute suit within said time shall be deemed conclusive evidence

against the validity of such claim or cause of action, and shall be a complete bar to such suit.''

It appears from the testimony that plaintiff shipped in April, 1912, a car of emigrant moveables from Cimarron, Kansas, to DeQueen, Ark., the car being loaded on April 2, and advised the agent of the initial carrier, the Atchison, Topeka & Santa Fe Railway Company of the number of head of stock, and that he wished to prepay the freight. The agent accepted the $88 "to be applied thereon," and put the calves on the bill to be paid for upon arrival at DeQueen. The car arrived at DeQueen the early morning of April 6, and appellant refused to deliver the shipment until $107.88 additional freight charges had been paid. This was paid by appellee on the 10th, under protest, and the shipment received. The additional charge was made upon a claim for excess weight and for the three calves. The horses, upon arrival, were taken to a stable, and the cattle were unloaded and put in the cattle pens near the depot. It was raining most of the time, and the pens were uncovered and muddy, being from three to fifteen inches deep in mud, according to the different witnesses. They took cold, and six of them finally died from the exposure in the following June and July.

Appellee contended that the carload shipment weighed 19,525 pounds; that he weighed all of the animals and other stuff upon unloading same, and that that was the correct weight. He also said, however, that the car was weighed at Dodd City, Kansas, and he supposed at the time that it weighed the amount contended for by the railway company—23,700 pounds; that he was present when it was weighed there, and heard the agent say that it weighed that amount, and objected to it, "claiming it was too much, and the railroad man then weighed it again, and reported the second weight to be the same as the first." The bill of lading shows on its face that the car contained three calves over the limit, and also that the $88 paid was "to be applied on the freight there," and the twelfth clause, as set out in the answer and plaintiff's receipt, shows the weight to be 23,700 pounds. Plaintiff traveled with the stock.

The tariff sheets introduced in evidence show the correct rate on the car of goods limited to 20,000 pounds to be 44 cents per hundred weight, which applied where the liability was limited, as in this case. It also shows the amount of excess above the 20,000 pounds limit was to be charged for as contended by the railroad, and that the weight of the three animals not charged were to be estimated 500 pounds each, and upon which the rate was $1.92. The rate was shown to be 44 cents upon a car of 20,000 pounds minimum, and upon the calves or yearlings, $1.92. The railway company refused to deliver the shipment except upon the payment for the yearlings at the proper rate, and of the excess over the minimum of 20,000 pounds, as shown by the waybill, 2,700 pounds after deducting 1,000 pounds for the weight of the calves.

There was much testimony introduced relative to the condition of the stock pens and the cattle, and their becoming sick and dying thereafter, the railway company objecting to the valuation of the cattle being shown to be more than the amount agreed upon in the bill of lading in case of loss, the bill of lading itself being in evidence.

The court instructed the jury that under the undisputed evidence, plaintiff was entitled to recover $11.88 overcharge of freight, and that there was no proof excluding the three head of calves paid for at the proper rate, that the balance of the shipment was of more than 20,000 pounds weight. It declined appellant's request to direct a verdict for it on the first and second counts of the complaint, and refused all its other instructions. From the judgment against it, the railway company brings this appeal.

*Read & McDonough,* for appellant.

1. The declaration of the weighing agent, testified to by the appellee, as to the second weighing being the same as the first, was erroneously excluded on the ground that it was hearsay. It was admissible because it was a verbal fact announced in the presence of the plaintiff, and upon the principle that the declaration of the result of the weighing was a part of the weighing. 3 Wigmore on Evidence, § § 1770-1795.

2.   Appellee's claim is barred by the provision in the contract limiting the commencement of any action to six months after the loss or damage shall have occurred.  101 Ark. 310, and cases cited; 82 Ark. 339; Id. 469; 111 Ark. 102.

3.   Instruction 1, given by the court, directing the jury to find for the plaintiff on the alleged overcharge in the sum of $11.88, was clearly erroneous.  There was sufficient evidence to go to the jury tending to show that the weight of the goods exceeded the 20,000 pound limit by 2,700 pounds.  Where there is some evidence, however slight, to sustain an issue of fact, that issue must be submitted to the jury.  112 Ark. 305.  The waybill was at least some evidence of the weight.  4 Elliott on R. R., § 1420.

4.   It was error to instruct the jury that the recovery as damages was the reasonable cash market value of the cattle at the time they were delivered at De Queen.  The market value of the cattle was not the measure of damages under the shipping contract, under which the measure of recovery was the agreed value.  169 S. W. 311; 108 Ark. 115; 149 N. W. 436; 83 S. C. 599; 132 Pac. 149; 141 N. W. 642.  And evidence of market value would be inadmissible.  150 S. W. 830.  The limitations, as to value, being for a valuable consideration, are valid and binding.  227 U. S. 639; 226 U. S. 519; Id. 491; 111 Ark. 102.  The shipper is bound by the terms of the bill of lading.  50 Ark. 397.

*Steel, Lake & Head,* for appellee.

1.   The original answer did not plead the limitation of six months in bar of the action, and, after the jury was empaneled and sworn, it was too late to amend the answer interposing such plea.  The failure to plead up to that time was a waiver.

The alleged limitation of six months set out in the twelfth paragraph of the contract was never intended to cover anything except damages incident to the transportation and actual shipment, and the language thereof can not properly be so construed as to cover injuries occur-

ring either prior to or subsequent to the actual transportation. 85 Ark. 293; 87 Ark. 331; 89 Pac. 683;' 54 So. 54.

2. The peremptory instruction for the $11.88 overcharge was correct. The waybill was only *prima facie* evidence that the car had an excess of weight, and this was overcome by the direct and positive testimony of the two men who weighed the car. The presumption, if any, must yield to the facts shown by the proof.

3. The judgment was right in any event, under the proof, and should be affirmed. The undisputed evidence shows that plaintiff was entitled to the amount of damages allowed. The court should apply in this case the same rule as was applied in *Railway Company* v. *Wilson*, 116 Ark. 163.

KIRBY, J., (after stating the facts). (1) It is contended that the court erred in directing a verdict against appellant for the alleged $11.88 overcharge, and in refusing to direct a verdict in its favor on the second count of the complaint, claiming damages to the cattle, during the time of the refusal to deliver them because of appellee's failure to pay the freight charges demanded.

There was testimony tending to show that the weight of the shipment was more than the 20,000 pounds minimum upon which the freight was charged. The waybill shows weight 23,700, and plaintiff stated he was present when the car was weighed about twenty miles from the starting point, and that the railroad agent announced the weight as 23,700 as shown by the waybill. That he immediately objected, saying it was too much, and thereupon the agent again weighed it and announced that the weight was correct; that he himself did not notice whether it weighed that amount or not.

His own testimony and that of another witness that the shipment weighed piecemeal upon being unloaded less than 20,000 pounds was undisputed. It can not be said, however, that the evidence was undisputed as to the correct weight of the shipment and plaintiff's statement of the weight as announced by the weigher of the car at the time it was weighed, as well as the statement of the way bill, was evidence tending to prove the correctness of it,

and the court erred in directing the verdict. *Williams* v. *St. Louis & S. F. Rd. Co.*, 103 Ark. 401; *Hill* v. *St. Louis, I. M. & S. Ry. Co.*, 119 Ark. 589.

(2) The court erred also in not directing a verdict for the railway company on the second cause of action, suit not having been brought therefor within the time stipulated in the bill of lading for the bringing of suit for damages. It was alleged in the complaint that the railway company arbitrarily and without right refused to deliver possession of the shipment upon its arrival at De Queen, and damages were caused from its retention and lack of care of the cattle, pending the payment of the additional freight demanded. The shipment was delivered on the 10th day of April, and the suit was not commenced until the 18th day of July, 1913, more than a year after the cause of action accrued. The amendment to the answer filed on the 27th day of January, 1915, alleged that the suit was not brought within six months after the damage occurred, and also said express stipulation in the bill of lading limiting plaintiff's right to recovery for damages to a suit brought within six months after the accrual thereof. Such a stipulation in a contract of carriage has been held reasonable and valid by this court, and binding upon the parties thereto. *Hafer* v. *St. Louis S. W. Ry. Co.*, 101 Ark. 310; *Mo. & N. A. Rd. Co.* v. *Ward*, 111 Ark. 102; see, also, *M., K. & T. Ry.* v. *Harriman*, 227 U. S. 657.

(3) If the railroad company was entitled to charge the amount of freight demanded, it had the right to hold the shipment until it was paid, and the damage occurring while it was being so held was damages accruing or arising out of the shipment covered by the contract made, and if it demanded freight it was not entitled to receive, and wrongfully held the shipment to compel the payment thereof, it was still liable for such refusal to deliver as a common carrier (*Arkansas Southern Ry. Co.* v. *German National Bank*, 77 Ark. 487), and answerable therefor only in accordance with this stipulation in the contract of carriage limiting the time in which suits should be brought for damages arising out of the shipment to six months after the damage occurred, or the cause of action accrued.

(4)   The undisputed testimony shows that the suit was brought long after the six months allowed therefor, and the court erred in not directing a verdict for appellant on this cause of action.   It can make no difference that this defense was not alleged in the answer filed, and was put in by amendment after the case was called for trial.   It was set up by permission of the court, which has large discretion in permitting amendments, and no abuse of discretion is shown herein prejudicial to the substantial rights of the complaining party.   *St. Louis, I. M. & S. Ry. Co.* v. *Holmes,* 88 Ark. 181; sections 6145-6148, Kirby's Digest; *Kempner* v. *Dooley,* 60 Ark. 531.

The fact that it was not set up in the first answer could not constitute a waiver of the rights to insist upon it, and having been properly pleaded and established by the undisputed testimony, it was conclusive of the rights of the parties.   For the errors indicated, the judgment is reversed and the cause remanded for a new trial.

SMITH, J., dissents.