MIDWEST BUS LINES, INC., T. O. Tyler and
Larry Cooper *v.* Jeff WILLIAMS and
Lola Williams

5-4363                                    422 S. W. 2d 869

Opinion delivered January 15, 1968

*S. Hubert Mayes* and *Barber, Henry, Thurman, McCaskill & Amsler,* for appellants.

*George J. Cambiano,* for appellees.

JOHN A. FOGLEMAN, Justice. These appeals by three codefendants are from adverse judgments in favor of appellees for alleged personal injuries sustained in a motor vehicle collision. At the time of the incident out of which the action arose, appellees, husband and wife, were passengers on a bus of appellant Midwest Bus Lines, Inc., driven by appellant T. O. Tyler. A collision, on the night of December 17, 1966, between the bus and an automobile owned and operated by appellant Larry Cooper gave rise to the litigation.

Appellees' cause of action against Midwest was based on allegations that Tyler was driving at such a high rate of speed that he was unable to swerve the bus in order to avoid the collision; that he was not keeping a proper lookout; and that he failed to slow down, stop or swerve to avoid the impact. Their allegations as to Cooper were that he drove his vehicle into the proper lane for the bus which was proceeding in the opposite direction from that Cooper was traveling and that he failed to regain control of his vehicle and bring it back into its proper lane. Each of appellees sought recovery for physical pain and suffering and mental anguish, permanent partial disability, and past and future medical expenses.

Cooper denied the allegations of negligence as to him and alleged that any injuries suffered by appellees were caused by negligence of Tyler. Tyler and Midwest denied all allegations of appellees, but alleged that any injuries suffered by appellees were caused by the negligence of Cooper. They asserted that this consisted of his driving at an excessive rate of speed across the center line of the highway into the lane where the bus was properly proceeding and his failure to keep his vehicle under control, to keep a proper lookout, and to yield the right-of-way to the bus. They asked judgment against Cooper in the amount of any recovery against

them, and Midwest cross complained, seeking recovery for damages to the bus. Cooper denied liability to the bus company and asked judgment over against the company for indemnity or contribution.

The case was submitted to a jury upon interrogatories. Responses of the jury showed that it found Cooper guilty, and Tyler not guilty, of negligence which was a proximate cause of the occurrence. It found Tyler guilty of failure to use the highest degree of care for the safety of appellees. It allocated responsibility for appellees' injuries—60% to Cooper and 40% to Tyler. It found the damages of appellee Jeff Williams to be $20,-000, those of appellee Lola Williams to be $30,000, and those of the bus company to be $534.67.

Appellants Tyler and Midwest moved for an order directing that judgment be entered upon the verdict or that the special verdicts be set aside. Their motion was based upon contentions that responsibility for the occurrence should not have been apportioned by the jury and that appellees' complaint should be dismissed as to them upon the jury's findings, or, in the alternative, that they should have judgment against Cooper for any sums assessed against them in favor of the appellees. They also asked, alternatively, that the verdicts be set aside for inconsistency.

Cooper likewise moved for entry of judgment or the setting aside of the jury verdicts for inconsistency. He contended that judgment aganst him should be limited to 60% of the damages to the other parties.

The judgment entered allowed recovery of $12,000 from Cooper and $18,000 from Tyler and Midwest by Lola Williams. It awarded Jeff Williams $8,000 from Tyler and Midwest and $12,000 from Cooper. It provided that Midwest have full recovery from Cooper for the damages to its bus.

Midwest and Tyler appealed from the judgments against them. Cooper appealed only from the adverse judgments in favor of the Williamses. Tyler and Midwest rely upon five points for reversal. Cooper asserts four. We will discuss those necessary to our decision on these appeals, together with any which may be pertinent on the retrial ordered.

The first ground for reversal urged by Tyler and Midwest is the failure of the trial judge to direct a verdict in their favor. The evidence showed that Cooper was driving a Chevrolet automobile east on Highway No. 64 and that the bus was going west when they collided on a sharp "S" curve on a steep hill about six miles west of Ozark. There is actually a series of three sharp curves in close succession. After the collision, skid marks, debris and dirt were found over an area covering five or six feet on the pavement, centered about two feet north of the center line, with pieces scattered over the line. The Chevrolet, a total loss, was found 192 feet east of the debris in the highway, severely damaged on the left side from front to rear. The bus sustained damage to the left front and left side. The damage to the left front extended from a point about six inches to one foot left of the front headlight to the left corner and that to the left side extended from this corner three or four feet toward the rear of the bus. There were a white center line and double yellow lines extending the entire distance of the curve and hill. Skid or "scuff" marks on the pavement extended a distance of 12 feet from the south lane across the center line into the westbound lane where the debris was lying. There were no other skid marks. The curve in the direction in which the bus was traveling was to its left. For eastbound traffic there is a fairly "steep" curve to the right just before the point where this collision occurred. The investigating officer testified that scuff marks are generally caused by rear wheels of a vehicle and result from a cutting of its wheels while it is proceeding around a curve at a high rate of speed so as to cause the vehicle to slide.

The bus was found by the officer 50 feet from the debris but the driver had pulled the bus up and backed it off the highway before his arrival.

Jeff Williams testified that he was watching traffic as he sat in the second seat back of the driver. His wife was asleep in the seat beside him. While he estimated the speed of the bus to be between 70 and 75 miles per hour at the time of the collision, his estimate was based entirely on the fact that the driver "had his motor revved up." He did not know what gear the bus was in or whether it was going uphill or downhill or traveling on a level or straight stretch. After he saw the lights of the approaching car through the bus windshield, the collision happened so quickly he did not have time to do anything or say anything to his wife or even to brace himself. He knew that either the bus or the car was over too far, but he couldn't tell which. He further testified that for a time before the collision, he could not see the terrain or telephone poles out the window. Earlier he had been able to see "passing lights" along the way and the bus was passing them pretty fast. He had no way of knowing how fast the car was coming, but he said that it was at a high rate of speed and its headlights "came up there pretty quick." After he felt a bump and heard a noise, he saw Tyler wrestling with the wheel trying to get the bus stopped. There is some uncertainty whether his estimate of the distance required to stop the bus after the collision was 30, 40 or 50 feet, or 30, 40 or 50 steps. He could only see the back of the head and shoulders of the driver before the impact, but Tyler was looking out the front of the bus and his head was straight ahead. He could only guess that a lookout was being kept ahead because the driver followed the road from Morrilton to this point past Ozark.

Since these appellants offered evidence after their original motion for a directed verdict was overruled, we must give consideration to any such evidence as may be favorable to appellees in determining whether a verdict

should have been directed at the conclusion of all the evidence. *Ft. Smith Cotton Oil Co.* v. *Swift,* 197 Ark. 594, 124 S. W. 2d 1. In addition to the testimony of Tyler, these appellants offered that of two passengers on the bus as to the cause of the collision. These witnesses located the bus in its proper lane at all times. One of them was sitting on the front seat with a clear view of the road ahead. He testified that the speed of the bus could not have been over 50 miles per hour and that the Cooper vehicle was only 50 or 60 feet ahead and two or three feet over the center line when he observed it. It appeared to him at first that the Cooper car would get back. He further stated that the lapse of time from the time he saw the car until the impact was "very, very fast, a couple of seconds." He said there wasn't really enough time for the driver to do anything but the driver did try to get out of the way the last second. The other passenger said that the bus was going uphill at a speed which could not have been over 50 miles per hour.

Tyler estimated his speed at 40 to 45 miles per hour and that of the Cooper car at 80. Cooper estimated his own speed at 45 miles per hour coming downhill and that of the bus at 60. Cooper first saw the bus when it was 8 or 10 car lengths from him just prior to going into a curve. He said that when he first saw the bus, it looked as if the driver was setting himself up for the curve, cutting over to his left some. Cooper thought that his own car was pretty close to the center line, but did not feel that it was across it. He stated that "apparently the bus was over the center line."

Appellees' contention that the evidence presented a jury question is founded entirely upon the basis that the evidence as to speed of the bus was controverted. The necessity for so confining their argument is obvious, because reasonable minds could not have come to any conclusion except that the Cooper car was at least across the center line when it came into the vision of the bus driver so suddenly and at such a short distance away

that Tyler was helpless to do anything to avoid the collision. A directed verdict in favor of Midwest should have been granted, since whether the bus was going 45 miles per hour or 70 miles per hour, its speed could not have been a proximate cause of appellees' injuries. According to the testimony most favorable to appellees, the vehicles became visible to each other at a distance of approximately 100 feet. Assuming that Tyler saw the dangerous situation at the first possible moment, he would still not have had sufficient time to avoid the collision, or even to react, as the vehicles were approaching each other at a speed of at least 132 feet per second. Thus the testimony of Jeff Williams as to speed would not afford a sufficient basis to support a jury verdict against these appellants for failure to exercise that degree of care with which they are charged. It is clear that a verdict should have been directed in favor of Midwest for the reason that reasonable minds could only conclude that there was no breach of the duty to exercise the highest degree of care. Where, as here, reasonable minds can only come to one conclusion, we have no alternative to a reversal of the lower court on this point. *Kansas City Southern Ry. Co.* v. *Bull*, 120 Ark. 43, 179 S. W. 172; *Huffman Wholesale Supply Co.* v. *Terry*, 240 Ark. 399, 399 S. W. 2d 658. Since the case has been fully developed in this respect, it will be dismissed as to Tyler and Midwest, so we need not consider other points raised by them.

We also find it necessary to reverse the trial court on appellant Cooper's contention that the court erred in instructing the jury to consider future medical expenses, future loss of earnings, and permanent disability as elements of damages to appellees. The only evidence relating to any of these elements was the testimony of Dr. Thomas H. Hickey, who examined and treated appellees and testified in their behalf. While Dr. Hickey stated that he thought Mr. Williams had a permanent disability resulting from this accident, he repeatedly and persistently stated that he would prefer

that a greater period of time elapse before he was called upon to state an opinion as to the extent of this disability. After stating his estimate, based upon the time that had elapsed, he stated that this percentage might change as time passed. He was unable to tell how long Mr. Williams would require treatment. On cross-examination he agreed that it was really too early to base an accurate medical opinion as to any permanent partial disability and that whatever opinion he stated would be a sort of qualified medical guess.

With reference to Mrs. Williams, the doctor stated that in his experience a cervical sprain injury, suffered by Mrs. Williams, would be fairly permanent if healing did not occur by 9 to 12 months. (The trial was approximately three months after the collision.) He also stated that a greater period of time should elapse before an evaluation of her disability was made. He said that he would prefer for the healing period to end in order to give an accurate medical opinion as to the possibility of her permanent disability and that there was a possibility that she would not have any. On cross-examination he stated that his evaluation was a medical guess on his part.

Finally, on cross-examination, these questions and answers were propounded and given:

"Q. Now, in order to properly evaluate their condition, particularly with reference to a medical certainty, don't you feel professionally that you need additional time?

A. I do.

Q. And is it not true, Doctor, that any evaluation which you now make in the absence of the opportunity for additional treatment and examination is pure speculation?

A. It is speculative."

In *Missouri Pacific Transp. Co.* v. *Kinney,* 199 Ark. 512, 135 S. W. 2d 56, this court said of these elements of damage:

> "Before such a recovery can be allowed, the permanency of the injury must be made to appear from the evidence with reasonable certainty and that future pain and suffering are inevitable and if they appear to be only probable or uncertain they cannot be taken into the estimate."

The court also quoted from the opinion in *St. Louis, I. M. & S. Ry. Co.* v. *Bird,* 106 Ark. 177, 153 S. W. 104, as to the propriety of the jury's considering such elements upon evidence of this nature. A part of this quotation is:

> "The experts on behalf of appellee did not testify that, in their opinion, the injury to Wharton Bird was permanent. It was a matter of speculation with them as to whether it was permanent or not. This being true, it must also have been only a matter of conjecture with the jury. But to fulfill the requirements of the law there must be affirmative testimony to the effect that the injury was permanent before the jury would be authorized to find that such was the fact; and the court should not allow the permanency of the injury to be considered as an element of damage, where the witnesses themselves are uncertain as to whether there would be any permanent injury, and where the nature of the injury, per se, does not show that the injury was permanent."

If there is any difference in the medical testimony here and that in the *Kinney* case, the testimony there may have been less speculative. The testimony here falls far short of establishing these elements of damage to the extent required, particularly in view of the fact that both appellees were said by the physician to have had virtually identical symptoms prior to the collision.

We are unable to even estimate to what extent the jury considered these elements in their liberal assessment of damages, so the case will have to be remanded for retrial as to Cooper's liability.

In view of this disposition, we need only mention one other point relied upon by appellant Cooper, since there is a possibility that the identical situation might arise. Cooper contends that the trial court erred in admitting testimony by him that he forfeited bond on a traffic violation charge arising out of this occurrence in violation of Ark. Stat. Ann. § 75-1011 (Supp. 1965). The testimony given, however, was not strictly responsive to a question asked Cooper on cross-examination. In answering a proper question as to whether he pleaded guilty to driving his car over the center line, Cooper responded: "Yes. I forfeited bond." A plea of guilty to the charge would have been a declaration against interest, and interrogation of Cooper about it was permissible. *Harbor v. Campbell*, 235 Ark. 492, 360 S. W. 2d 758. Objection made, on behalf of Cooper, to the question was properly overruled. The court was not called upon by this appellant to make any ruling upon the voluntary answer given by appellant, to give any admonition to the jury, or to do anything at all, so no error was committed by the trial court. Furthermore, appellant cannot complain of errors which he himself committed. *Wallace v. Collins*, 5 Ark. 41, 39 Am. Dec. 359; *Sithen v. Murphy*, 12 S. W. 497 (Ark. 1889); *Scott v. McCraw, Perkins & Webber Co.*, 119 Ark. 133, 177 S. W. 901; *Rinehart & Gore v. Rowland*, 139 Ark. 90, 213 S. W. 17; *Withem v. State*, 175 Ark. 453, 299 S. W. 739; *Jones v. State*, 204 Ark. 61, 161 S. W. 2d 173; *Burton v. State*, 204 Ark. 548, 163 S. W. 2d 160.

Reversed and dismissed as to Tyler and Midwest Bus Company. Reversed and remanded as to Larry Cooper.