ARKANSAS BEST FREIGHT SYSTEM ET AL
*v.* E. B. HILLIS

5-4522                                     427 S. W. 2d 167

Opinion delivered May 6, 1968

*Felver Rowell Jr.,* for appellee.

LYLE BROWN, Justice. Arkansas Best Freight System, Inc., and Daniel L. Thompson, driver for ABF, appeal from a judgment awarded E. B. Hillis for injuries and damages resulting from a collision between trucks driven by Thompson and Hillis. Appellants' principal attack is on the sufficiency of the evidence. The amount of the verdict, the denial of their motion for a directed verdict, and the propriety of one instruction are also questioned.

Thompson was pulling a forty-foot trailer containing 42,000 pounds of explosives. It was January 21, 1967, at approximately 7:15 a.m. He was headed east on U. S. Highway 64 outside Morrilton. Visibility was good. He was on a straight stretch of highway about one and a half

miles in length. He faced a very slight upgrade. Proceeding in the same direction and a considerable distance ahead of Thompson was appellee Hillis, a carpenter. His destination was a job site about midway of the straight stretch. It was necessary for him to make a left turn and enter a private driveway to reach his destination. At a time when Hillis was either set to make his turn, or actually making a turning movement, his 1956 truck was struck from the rear. The point of impact was in Thompson's passing lane and some two feet across the center line. Hillis' truck was headed fairly straight down the highway, as shown by the fact that the pickup was sideswiped fairly evenly from left rear to left front. Hillis' truck was knocked to his right, cleared the highway, and came to rest in a ditch several feet away. The ABF truck proceeded down the highway in Thompson's passing lane, then back to his driving lane, and came to rest upright on his right shoulder of the highway. That point was 651 feet beyond the point of impact.

The facts just recited are undisputed. Other evidence offered by Hillis is in dispute. Hillis was the only eyewitness who testified in his behalf. He stated that he stopped his truck some twenty-one feet before reaching a point opposite the driveway; that he could see through his rear-view mirror a large truck approaching him a considerable distance away; that he stopped his truck to permit the passage of three vehicles approaching from the opposite direction; he was not certain of the length of time during which he gave a manual left turn signal by putting his left arm through the vent window; he was positive that the arm remained in that position during the time the three vehicles were passing; that during the passage of the vehicles he might have been slightly over the center line; that very shortly after the last vehicle passed, and before he had time to release his brake and get both hands on the steering wheel, he was struck by the ABF truck.

State Trooper Duvall arrived at the scene shortly af-

ter the accident and before either vehicle was moved. He testified, among other things, that there were no skid marks from the debris down to the ABF trailer; that the front bumper of ABF's truck was bent backward and against the right front tire, not enough to lock the wheel but sufficient to cut the tire. The right front fender and the saddle tanks of that truck were damaged.

Under the law, when applied to the evidence produced by Hillis, it would have been error for the court to grant an instructed verdict at the close of Hillis' evidence. Being the lead vehicle, he had the superior right to the use of the highway for the purpose of leaving it to enter an intersecting road or passageway. *Madison Smith Cadillac Co.* v. *Lloyd,* 184 Ark. 542, 43 S. W. 2d 729 (1931). Hillis asserted that he approached the intended turn by edging over the center line, coming to a complete stop, and extending his arm for the left turn signal, at a time when the ABF truck was a considerable distance behind him. That evidence, along with the assertion, substantiated by physical evidence, that Hillis did not make a sudden left turn, made a question for the jury.

Daniel Thompson, ABF's driver, was appellants' only eyewitness. He asserted that he pulled into the passing lane approximately 100 yards behind Hillis. At that time, so he contends, Hillis was moving slowly down the highway. It was Thompson's version that Hillis began a left turn at a point when the ABF truck was within ten feet of the Hillis truck. He denies having seen any other vehicles on the road, nor did he see any hand signal given by Hillis. On cross-examination it was developed that an early fog had cleared and there was good vision. In fact Thompson testified he could see for a mile and a half down the road. At a point when Thompson was some 400 yards behind Hillis, Thompson could perceive that he was rapidly gaining speed on Hillis and at a time when Thompson was driving at approximately 48 miles per hour. Thompson estimated Hillis' speed at

twenty miles per hour. As a result of Hillis' slow speed, Thompson began a passing movement 100 yards behind Hillis.

If Thompson's version of distance and speed is correct, his position would have been somewhat similar to the trailing car in the *Madison Smith Cadillac* case. There the trailing vehicle observed as far back as 100 yards that the forward car was making some fifteen miles per hour. Under those circumstances this court commented that the trailing vehicle could have taken precautions until it ascertained for what purpose the lead car was slowing down. Also the jury here could have given weight to the fact that Thompson, rather than reduce his speed and stop if necessary, deliberately elected to maintain his speed. If he so acted, then he assumed the hazard of turning to the left and passing the Hillis car.

We hold that the trial court properly denied appellants' motion for a directed verdict at the conclusion of all the evidence.

In light of Hillis' testimony, together with some of the testimony of Thompson which favored Hillis, we are unable to say the jury verdict is not sustained by substantial evidence.

Appellants rely on *Midwest Bus Lines* v. *Williams,* 243 Ark. 854, 422 S. W. 2d 869 (1968). There we held that there was but one conclusion to be reached and we reversed and dismissed as to two defendants. In *Midwest Bus Lines* there were physical facts which mathematically did not authorize the finding of negligence as to Tyler and Midwest. Such evidence is not here available. Concededly, Hillis' version of the occurrence is not flawless. On the other hand, the version given by Thompson is stoutly disputed. We have only the testimony of two eyewitnesses and because of substantial conflict in their testimony the problem fairly reduces itself to a ques-

tion of credibility. That is solely the prerogative of the jury. See *Southern Kansas Stage Lines* v. *Ruff,* 193 Ark. 684, 101 S. W. 2d 968 (1937).

The verdict is not excessive. It cannot be disputed that appellee received a terrific blow to his truck, an impact sufficient to force the heavy ABF truck bumper back into the right front tire. The course taken by Hillis' truck undoubtedly resulted in an experience that could have taken his life. That is because the truck went into a hole of such depth as to conceal a larger part of his truck. The right side of the truck was heavily damaged as a result of the impact with the ditch bank.

Dr. Logue found small chips of bone around the left hip, which was partially dislocated, and the capsule was apparently torn away at the time of the dislocation. He testified that Hillis had a restriction of motion in the left leg and because of his age of 67 years it would probably be permanent. That restriction of motion will, in the doctor's opinion, restrict the use of the leg by an estimated ten per cent. He further testified that an injury of this type is generally accepted to be painful. Appellee testified that the hip is still giving pain and he is forced to sit on the right side.

Hillis testified that he received cuts all about the forehead, which required forty stitches, several abrasions on the left hand and elbow, and a loss of teeth. He was hospitalized seven days and his medical totalled $628.64. At the time of the accident Hillis was earning $70 per week as an experienced carpenter. That was his usual weekly wage when he worked. He was regularly employed at the time of the accident, although he did not earn a sufficient amount in 1965 and 1966 to pay an income tax. The record is not clear, but it could have been due to loss of time from a back injury. Hillis testified he had not been physically able to perform any labor since the accident. The damage to his truck was fixed at $300. Considering the recited factors, Hillis' vocation,

and today's purchasing power of money, we are unable to say that the judgment for $20,000 should be disturbed.

Appellants contend the court's instruction on damages was in error in that it permitted the jury to consider scars, disfigurement, and visible results of the injury. They contend that the evidence did not justify the submission of those elements. We have referred to the testimony of Hillis concerning the taking of forty stitches about the forehead. The number of scars still apparent at the time of trial is not in the record. However, it is reflected that there were scars about the forehead and they were exhibited to the jury. For those reasons we think the objection is without merit.

Affirmed.