**226**

Louis Bernard KEATON, a Minor, by William T. Keaton, His Father and Next Friend, Plaintiff,

v.

Norma Ethelyn McCOOK, Testamentary Executrix of the Estate of Willie Dale McCook, Deceased, Defendant.

Civ. A. No. 821.

United States District Court
W. D. Arkansas,
Texarkana Division.

Nov. 6, 1962.

Wheeler, Watkins, Hubbard & Patton, Texarkana, Tex., Smith & Sanderson, Texarkana, Ark., for plaintiff.

Atchley, Russell, Hutchinson & Waldrop, Texarkana, Tex., Shaver, Tackett & Jones, Texarkana, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

### STATEMENT

This case arose from an automobile collision that occurred in Hempstead County, Arkansas, on November 13, 1961, between an automobile driven by the father of Louis Bernard Keaton, plaintiff, and an automobile driven by Willie Dale McCook, testate of defendant.

Liability was admitted by the defendant in open court, and the question of damages only was tried to the court on September 28, 1962. At the conclusion of the presentation of the testimony, the question was taken under advisement by the court subject to submission by the parties of briefs in support of their respective contentions. The briefs have been received, and the court, having considered the pleadings, the testimony adduced at the trial, the exhibits and briefs of counsel, now makes and files herein its findings of fact and conclusions of law, separately stated.

### FINDINGS OF FACT

1.

The plaintiff, Louis Bernard Keaton, is now and was at all times a citizen of Howard County, Arkansas. Norma Ethelyn McCook, a citizen of Abilene, Taylor

County, Texas, is the duly appointed, qualified and acting Executrix of the Estate of Willie Dale McCook, deceased, having been duly appointed and qualified as such Testamentary Executrix on December 27, 1961, by the County Court of Taylor County, Texas, and Willie Dale McCook, deceased, was a citizen of Abilene, Taylor County, Texas, at the time of his death on November 13, 1961. The amount in controversy in this cause exceeds the sum of $10,000, exclusive of interest and costs.

## 2.

The plaintiff had prior to the time of the collision enjoyed good health and had pursued all the normal activities of a child of 12 years of age. At the time of the collision the plaintiff was riding in the front seat of his father's automobile, and at the instant of impact the plaintiff was thrown forward, his chin and forehead striking the dashboard of the automobile. He was knocked unconscious, and the most serious injury that he sustained, the extent of which is at issue in the present case, was the splitting open of his chin and a fracture in two places of his lower jaw.

The plaintiff was taken to a hospital in Hope, Arkansas, where he was treated generally for all of the injuries he sustained and was administered medication to alleviate his pain. At this time due to the double fracture of plaintiff's lower jaw, it was immobilized with a temporary brace. Plaintiff remained at the hospital in Hope for six days. He then returned to his home where he remained for ten days. During this time he could neither eat nor talk, and he endured a considerable amount of pain and suffering notwithstanding the medication which was administered to him. At the end of this 16-day period plaintiff was taken to Texarkana, where his jaw was X-rayed to ascertain the extent and location of the fractures in his lower jaw. The X-ray photographs revealed that the mandible or the lower jawbone was broken on each side at the necks of its condyles, which are the heads or connecting balls of the mandible which connect to the skull at the locations known as the temporal sockets.

In Texarkana treatment was begun under the supervision of Dr. Patterson, a dentist, who, after consulting with Dr. Noble, an oral surgeon, undertook to restore the fractured lower jaw to its original position, with relation to the placement of the condyles in the temporal sockets and the restoration of the proper occlusion, or alignment of the teeth, by the placement of metal braces around the upper and lower teeth and securing them into place by threading wire through the braces into the gums and around the imbedded roots of the teeth and out again through the gums to the braces on the other side. The braces impounding the lower jaw were affixed to the braces secured to the upper jaw by means of elastic ligatures. These braces remained in place with the upper and lower teeth incapable of separation for approximately 75 days, at which time the elastic ligatures were removed but the braces remained in place for an additional two weeks. During the 75-day period that the plaintiff's jaws were shut, his only nourishment consisted of various liquid preparations and the only time that his mouth was opened was when he went to Dr. Patterson for periodic examinations of his progress.

After 106 days from the time they were installed, the braces were removed. Needless to say, both the installation and the removal of the braces, as well as his first efforts to move his mouth, were painful to the plaintiff.

At the time of his accident the plaintiff weighed 140 pounds, and during the duration of his treatment he lost 22 pounds. After the braces were removed his diet was thereafter upgraded from liquids to strained baby foods, ground meat, and other soft food through which he progressed through six or seven months prior to the trial of this case. During this time he not only gained back the 22 pounds he had lost but he gained an additional 18 pounds.

**3.**

Plaintiff's response to treatment as of the date of trial may be classified both objectively and subjectively.

The objective findings, as shown by X-ray photographs of his tempormandibular joints, indicate that the fractures of the necks of the condyles have completely mended, and the only deformity noted is a slight bowing outward around the fracture area on each side of his lower jaw. As a result of this bowing at the base of the condyloid processes, the condyles have been angulated anteriorly bilaterally, which may have affected the natural gliding movement forward and backward of the condyles as the mouth opens and closes. Although the X-ray photographs indicate that the condyles have been returned to their proper places in the temporal sockets, yet there has been indicated an arthrosis or degenerative process which has taken place by which the sacs containing fluid, which act as cushions, in these particular joints are no longer present. As a result of this condition, plaintiff contends that when he moves his lower jaw to any extent, there occurs crepitation, i. e., a rubbing noise caused by the ends of the bones, or a "clicking" noise, and that the noise is especially noticeable when the jaw is opened wide, but admitted that there is no pain associated with this condition— just the sensation of the noise. The medical testimony disclosed that most persons, or at least many people, have the same "clicking" noise upon yawning or the lowering of the lower jaw to its limit.

At the present time, since the plaintiff enjoys proper occlusion, i. e., proper alignment of his teeth, and since there is no indication of the occurrence of traumatic arthritis in the temporal sockets, there is no further operative procedure required to be undergone by the plaintiff, merely an occasional examination which could be accomplished in the process of normal dental care.

**4.**

As to the plaintiff's subjective response to treatment, he is almost free from pain at present although he has experienced considerable pain and suffering which varied according to the treatment and medication that he had received in the past. He has regained the use of his lower jaw to the extent that he can chew most food with the exception of such items as beefsteak, hard candy, raw carrots, apples, nuts, etc., which still cause him discomfort when he attempts to chew them.

Plaintiff returned to school on February 5, 1962, and since that time has been able to enter into the activities of his playmates with the exception of activities which involve rough-and-tumble bodily contact. The only subjective symptoms which appear to hinder the plaintiff in the carrying out of normal pursuits of any other 13-year old are the lethargic state that he has fallen into since the onset of his injuries and occasional headaches which occur once or twice a week. These conditions have not caused any great alarm on the part of his family or his doctor, other than his having to endure the epithet of "lazybones" hurled at him by his playmates because of his lethargy and having to take an ordinary remedy to cure his occasional headaches.

**5.**

It has been stipulated that the sum of $847.50 has been expended by William T. Keaton, father of the minor plaintiff, as medical expenses for said minor plaintiff in this cause.

### DISCUSSION

The sole issue to be determined is the amount of damages to which the plaintiff is entitled. The general rule in Arkansas which governs the award of damages in cases involving personal injuries was stated by this court in Kisor v. Tulsa Rendering Co., D.C., 113 F.Supp. 10 (1953), at page 19 as follows:

> "The rule of damages applicable to personal injuries is stated in Coca-Cola Bottling Co. of Arkansas v. Adcox, 189 Ark. 610, at page 613,

'74 S.W.2d 771, at page 772, as follows:

" 'The measure of damages for a physical injury to the person may be broadly stated to be such sum, so far as it is susceptible of estimate in money, as will compensate plaintiff for all losses, subject to the limitations imposed by the doctrines of natural and proximate consequences, and of certainty, which he has sustained by reason of the injury, including compensation for his pain and suffering, for his loss of time, for medical attendance and support during the period of his disablement, and for such permanent injury and continuing disability as he had sustained. Plaintiff is not limited in his recovery to specific pecuniary losses as to which there is direct proof, and it is obvious that certain of the results of a personal injury are unsusceptible of pecuniary admeasurement'.

"See also, Hot Springs Street Railway Company v. Hill, 198 Ark. 319, 128 S.W.2d 369; St. Louis-San Francisco Railway Co. v. Herndon, 198 Ark. 465, 129 S.W.2d 954."

■ Without question the father of the minor plaintiff is entitled to recover the medical expenses paid by him, and the minor plaintiff is entitled to recover damages for the pain, suffering and mental anguish endured by him.

The chief contested issues are whether the plaintiff's injuries to his jaw are temporary or permanent and whether he will endure future pain, suffering and mental anguish based on those injuries.

The general rule upon which a recovery for permanent injuries may be based is stated as follows in 15 Am.Jur., Damages, Sec. 75:

"It is a rule in personal-injury actions that recovery may be had for permanent injuries or lasting impairment of health—that is, for the loss resulting from complete or partial disability in health, mind, or person thereby occasioned.

"The measure of damages in such cases is compensation for the disabling effect of the injury, past and prospective * * *. The destruction or impairment of any physical function is a proper element of damages * * *.

"To warrant a recovery for a permanent injury, the future effect of the injury must be shown with reasonable certainty. It is not necessary that the evidence show conclusively or without a shadow of doubt that the injuries are permanent. But while absolute certainty should not be required, a mere conjecture, or even a probability, does not warrant the giving of damages for future disability which may never exist."

■ The Supreme Court of Arkansas has stated the same rule in Missouri Pac. Transportation Co. v. Kinney, 199 Ark. 512, 135 S.W.2d 56 (1939), as follows beginning at page 518 of 199 Ark., at page 58 of 135 S.W.2d:

"In the case of St. Louis I. M. & S. Ry. Co. v. Bird, 106 Ark. 177, 186, 153 S.W. 104, 107, the rule is clearly stated by this court in the following language: 'The testimony viewed in the strongest light in favor of appellee, does not make it reasonably certain that Wharton Bird was permanently injured. Unless there is testimony tending to show with reasonable certainty that the injury is permanent, the court should not permit the jury to assess any damages for permanent injury. A. L. Clark Lumber Co. v. St. Coner, 97 Ark. 358, 133 S.W. 1132. See, also, Ark. & La. Ry. Co. v. Sain, 90 Ark. 278, 119 S.W. 659, 22 L.R.A., N.S., 910; 13 Cyc. 144, and cases cited.'

*  *  *  *  *  *

"This rule of law, as announced in the Bird case, has been approved by this court in many cases, among them being the following: Midland Valley R. Co. v. Scoville, 109 Ark. 29,

158 S.W. 954; Scullin v. Vining, 127 Ark. 124, 191 S.W. 924; McCord v. Bailey et al., 195 Ark. 862, 114 S.W. 2d 840."

Turning to the facts in the instant case, the doctors are in agreement that although there is a slight deformity in the lateral bowing of the condyles of plaintiff's lower jaw, nevertheless the plaintiff enjoys proper occlusion in the alignment of his teeth; he is free from traumatic arthritis; and there is no need of future operative procedure or treatment of any kind. The area of disagreement centers about the effect of plaintiff's inability to chew hard food without experiencing discomfort and presently to open his mouth as widely as he could before the date of his injuries. Dr. Patterson, the dentist who operated on the plaintiff and who has treated him ever since, is of the opinion that this condition will not improve. However, Dr. Noble, a highly trained oral surgeon of considerable experience in cases of this sort and who was called in by Dr. Patterson as a consultant on plaintiff's case, has examined plaintiff from time to time and is of the opinion that within three to six months plaintiff should regain full use of his lower jaw for chewing purposes and will not suffer discomfort after that time. He bases this prognosis on the experience that he has gained from operation and treatment of between 300 and 400 cases similar to that of the plaintiff. Guided by the standard of reasonable medical certainty, this court is of the opinion that the plaintiff has failed to show that he has sustained a permanent injury or disability, and therefore is not entitled to recover damages on his claim that his injuries are permanent.

As for future pain and suffering, the general rule is stated in 15 Am.Jur., Damages, Sec. 73, as follows:

"It is well settled that in an action for a personal injury, future pain and suffering on the part of the injured person in consequence of the injury constitute a proper element of the damages which may be allowed, provided there is the requisite certainty or probability that such pain and suffering will result.

"According to some courts the injury must be shown to be permanent to justify an allowance for future pain and suffering. * * *

"Damages for future pain and suffering must have a basis in the evidence submitted to support the claim therefor; pain and suffering which are merely possible and speculative or conjectural are not to be considered in assessing the damages. In some jurisdictions the courts have adopted the 'reasonable certainty' rule under which damages may be recovered only for such future pain and suffering as it is reasonably certain will result from the injury received."

The Supreme Court of Arkansas has stated the same rule in Missouri Pac. Transportation Co. v. Kinney, supra, beginning at page 517 of 199 Ark. at page 58 of 135 S.W.2d:

"In the instant case the trial court instructed the jury, over the objections and exceptions of appellants, to assess such damages as would reasonably compensate appellee for 'the physical pain and mental anguish suffered and endured by him in the past, if any, and that which he will endure in the future', 'the effect of the injury on his health', 'pecuniary loss from his diminished capacity for earning money through life, if any'.

"Before such a recovery can be allowed, the permanency of the injury must be made to appear from the evidence with reasonable certainty and that future pain and suffering are inevitable and if they appear to be only probable or uncertain they cannot be taken into the estimate.

* * * * * *

" 'Mr. Hutchinson says: "The jury may take into consideration future as well as past physical pain

and suffering; but to justify them in doing so it must be made reasonably certain that such future pain and suffering are inevitable, and if they be only probable or uncertain they cannot be taken into the estimate." 3 Hutchinson on Carriers, § 805, and cases cited; Chicago, Rock Island & Pac. Ry. Co. v. Archer, 46 Neb. 907, 65 N.W. 1043; Smith v. Milwaukee Builders' & Traders' Exch., 91 Wis. 360, 64 N.W. 1041, 30 L.R.A. 504, 51 Am.St.Rep. 912.'

\* \* \* \* \* \*

"It is our view that the testimony in the instant case, when viewed in its most favorable light to appellee, falls short of making it reasonably certain that appellee received a permanent injury and that it is inevitable that he will endure future pain and suffering."

This court followed the same rule in the case of Waycaster v. Sorenson, D.C., 124 F.Supp. 892, p. 900 (1954).

In the present case, even if the plaintiff could have proven that he sustained permanent injuries to a reasonable medical certainty, it is the opinion of the court that the plaintiff could not have proven future pain and suffering beyond that of a mere possibility. At most his present pain and suffering, if any, is intermittent and slight, and a preponderance of the medical testimony establishes to a reasonable medical certainty a rapid lessening of any pain and discomfort, not a worsening.

Furthermore, there is no question but that the plaintiff is now, and in the future will be, free from disfigurement and traumatic arthritis as a result of the injuries sustained in the present cause.

Therefore the court is of the opinion that the minor plaintiff should be awarded only a sum sufficient to reasonably compensate him for the temporary injuries which he has sustained, including conscious pain, suffering and mental anguish, and that plaintiff's father, William T. Keaton, should be awarded the stipulated medical expenses that he has incurred to date on behalf of the plaintiff.

### CONCLUSIONS OF LAW

1.

The court has jurisdiction of the parties to and the subject matter of this cause of action.

2.

The plaintiff is entitled to recover of and from the defendant the sum of $6,-100.00 and his costs.

A judgment in accordance with the above is being entered today.