Spink *v.* Mourton.

5-2819                                         362 S. W. 2d 665

Opinion delivered December 17, 1962.

*Ben Core,* for appellant.

*Nabors Shaw, Donald Poe, Dobbs, Pryor & Dobbs,* for appellee.

George Rose Smith, J. This is an action by Paul W. Spink and his wife to recover damages from Malvin Mourton, an insurance agent at Mena, because of Mourton's allegedly negligent failure to obtain a personal property floater policy for the Spinks. The jury returned a verdict for Mourton. The Spinks then moved unsuccessfully for a judgment notwithstanding the verdict. They now contend that there is no substantial evidence to support the verdict and that the trial court should therefore have granted their motion for judgment *non obstante veredicto.*

The proof must be examined in detail. In July of 1959 Spink was notified by his insurer, Western Fire In-

surance Company, that the fire policy upon his home and the floater policy upon his household goods and personal effects were to be canceled on August 1. In an effort to obtain similar coverage elsewhere Spink discussed the matter with Mourton, a local soliciting agent, on the evening of July 27. Mourton assured Spink that he could write the fire policy, but he explained that he had never written a personal property floater and would have to make a call to Little Rock to find out about this coverage.

The next day, July 28, Mourton telephoned Lewis Johnson, the Little Rock manager for Farmers Union Mutual Insurance Company—one of several companies represented by Mourton. Johnson said that his company did not write personal property floaters, but he offered to pass the request on to E. W. Turner, whose agency, the Farmers' Insurors Agency, did write such policies. Mourton and Johnson discussed the premium charge for a floater policy and concluded that it would be about twelve dollars for each $1,000 of insurance.

Later that same morning, July 28, Spink came by Mourton's office. Mourton assured him that the matter had been taken care of, that he was covered as of noon on July 30. Mourton testified that in giving this assurance he relied upon Johnson's promise to submit the application to Turner. Mourton collected from Spink the premium for the proposed fire policy and the premium (as estimated by Mourton) for the personal property floater. That afternoon Mourton mailed to Johnson an application for the fire policy and a list of the personal property to be covered by the floater. The fire policy was issued in due course by Johnson's company, and Johnson forwarded the list of personal property to Turner, as he had promised to do.

Instead of writing a one-year floater policy Turner's agency issued only a ten-day binder, effective July 30, with Anchor Casualty Company as the insurer. The binder was enclosed in a letter that reached Mourton's office on August 4. The letter is not in the record, but the other evidence indicates that in the letter Turner asked for

additional information as a basis for writing the floater policy.

Mourton's office mail was customarily opened by his secretary, Jo Ann Cole. She read Turner's letter and told Mourton what it said, but she wholly failed to notice that the binder was to expire after ten days. Mourton, without reading either the letter or the binder, directed Miss Cole to send the binder back to Turner, along with the information that he wanted. In complying with these instructions Miss Cole sent Turner, for his information, the floater policy that Spink had formerly had with Western Fire.

In response to this communication Turner again wrote to Mourton, on August 9. He pointed out that the ten-day binder had expired. Assuming that the Western Fire floater policy was still in force, for he had never been informed of its cancellation, Turner again asked for more information as a basis for issuing the requested substitute policy upon some future date.

At about daybreak on August 10 Mourton left with his family for a short vacation in Colorado; so he was not in his office when Turner's letter arrived. Miss Cole opened the letter but took no action toward replacing the lapsed coverage. The Spinks' home and household effects were destroyed by fire on August 13. When Mourton returned to his office on August 15 he forwarded to Turner a check for the premium upon the proposed floater policy, but Turner disclaimed liability and refused the tender. The Spinks recovered their real property loss from Johnson's company, which had issued the fire policy, but they eventually learned that no insurer had issued a personal property floater. The present action was brought to hold Mourton liable for negligence in failing to obtain such a policy.

The verdict was in favor of Mourton. Now it is true that the trial judge might have granted a new trial if he found the verdict to be against the preponderance of the evidence. *Bockman* v. *World Ins. Co.,* 222 Ark. 877, 263 S. W. 2d 486. But this case does not involve a motion for a

new trial; instead, the request was for a judgment notwithstanding the verdict. Such a motion may be granted if there is no substantial evidence to support the verdict. *Stanton* v. *Ark. Democrat Co.*, 194 Ark. 135, 106 S. W. 2d 584. In other words, as counsel for the Spinks rightly concedes in his brief, the motion for judgment n.o.v. was properly denied unless it can be said that the trial court should have directed a verdict in favor of the plaintiffs. That is the issue.

Owing to the fact that the plaintiff has the burden of proof—that is, the burden of persuading the jury that he is entitled to win the case — a directed verdict for the plaintiff is a rarity. As we said in *Woodmen of the World Life Ins. Soc.* v. *Reese,* 206 Ark. 530, 176 S. W. 2d 708: ''A verdict upon an issue of fact should not be directed in favor of the party who has the burden of proof with respect thereto, unless such fact is admitted, or is established by the undisputed testimony of one or more disinterested witnesses and different minds cannot reasonably draw different conclusions from such testimony.''

The problem is especially acute in negligence cases, for the standard of care — that of a reasonably careful person—is apt in almost every case to become an issue of fact for the jury. In one of the few cases that have discussed this exact point the Court of Appeals for our circuit had this to say: ''Negligence and proximate cause will become transformed from questions of fact into questions of law rather on probative deficiency than on probative abundance. Thus, no matter how strong the evidence of a party, who has the burden of establishing negligence and proximate cause as facts, may comparatively seem to be, he is not entitled to have those facts declared to have reality as a matter of law, unless there is utterly no rational basis in the situation, testimonially, circumstantially, or inferentially, for a jury to believe otherwise.'' *United States Fire Ins. Co.* v. *Milner Hotels,* 8th Cir., 253 F. 2d 542.

Testing the case by our language in the *Reese* case, *supra,* we cannot declare that the trial court should have

directed a verdict for the Spinks unless we are prepared to announce that no reasonable person could draw any conclusion from the proof except that Mourton was negligent in failing to obtain the floater coverage. It seems plain that the proof is not so completely one-sided as that. The jury may have thought that Mourton acted with reasonable care in assuming that Johnson would see that the policy was issued by Turner's agency. Or that Mourton acted with reasonable care in relying upon his secretary's understanding of the pivotal letter from Turner. Or that Mourton, had he read the letter and binder himself, might in the exercise of due care have overlooked the single line of type giving the expiration date of the binder. Or that Mourton's absence on vacation when Turner's second letter arrived, at a time when it was still not too late to obtain coverage, was an excusable misfortune rather than culpable negligence. All these questions involve niceties of judgment, matters of degree, about which we cannot say that all fair-minded men must necessarily arrive at the same conclusion. Hence a question of fact was presented; so the motion for judgment notwithstanding the verdict was properly denied.

There is one other issue. The appellants also sought to recover from Farmers Union Mutual Insurance Company, Turner, Farmers' Insurors Agency, and Anchor Casualty Company, upon the theory that each of these defendants was under a duty to notify the Spinks personally that the ten-day binder was to expire on August 9. Upon this issue the trial court directed a verdict in favor of the defendants.

The court's action was correct. There is no suggestion that any of these defendants had any direct communication with the Spinks before the loss occurred. They dealt only with Mourton, the local soliciting agent. As a matter of common knowledge we know this to be the usual practice in the insurance business. There is literally no proof whatever to support the contention that these defendants were under an obligation to inform the Spinks of the expiration date that appeared on the binder sent to Mourton.

To have submitted that issue to the jury would have empowered that body to impose liability upon the basis of speculation and conjecture rather than upon the basis of any evidence in the record. Hence the directed verdict was proper.

Affirmed.