RICHARD VERNON SWENSON AND C. B. MONROE *v.* EUGENE G. HAMPTON

5-4462                                    424 S. W. 2d 165

Opinion delivered February 19, 1968

*Carrold E. Ray* and *House, Holmes & Jewell,* for appellants.

*Daggett & Daggett,* for appellee.

GEORGE ROSE SMITH, Justice. This is an action for personal injuries and property damage brought by the appellee, a retired army colonel. At about midday on January 14, 1966, on a highway in Crittenden county, Colonel Hampton met a tractor-trailer rig being driven by the defendant Swenson for his employer, the defendant Monroe. As the two vehicles approached each other a large inflated spare tire fell from the trailer and struck the plaintiff's radiator with great force, inflicting the injuries complained of. In the court below the defendants filed a general denial but offered no proof, so that the principal issue for the jury was that of damages. This appeal is from a $7,800 verdict and judgment for the plaintiff. We need discuss only two of the points for reversal.

First, it is insisted that the court erred in allowing Dr. Gray, for thirteen years a general practitioner, to testify that in his opinion the accident could have caused the neck and shoulder pains that Hampton was still complaining of at the time of trial. Dr. Gray had testified that when his patient's shoulder pain continued be-

yond a normal healing period he referred the patient to a nerve specialist. "I felt that he needed some special examination, some neurological examination that I don't make." The appellants rely upon the sentence just quoted as a basis for their insistence that Dr. Gray was not qualified to testify that the accident could have caused the pains.

We think the court was right in admitting Dr. Gray's testimony. A general practitioner often refers his patients to specialists, as for the removal of an appendix or for the treatment of a skin disease. That does not mean, however, that the G. P. is not qualified to discuss his patients' ailments. To the contrary, as we held in *Crocker's Heirs* v. *Crocker's Heirs*, 156 Ark. 309, 246 S. W. 6 (1922), his expert opinion is admissible, subject to the jury's determination of its proper weight.

Secondly, the appellants argue that there was no substantial evidence to justify the court in submitting to the jury, as elements of damage, the permanency of the plaintiff's injuries and his loss of earnings. With respect to permanency, Dr. Gray's statement that Hampton had suffered a 10 percent disability to the body as a whole sufficiently supported the instruction.

The serious question is whether the plaintiff adduced adequate proof of earnings lost between the date of the accident and the date of the trial. He made no showing of his earnings in the military service, his earnings in any civilian pursuit, or his training or fitness for any particular occupation. No other witness, such as an employment counselor, was called to testify. See Woods, Earnings and Earning Capacity as Elements of [Damage] In Personal Injury Litigation, 18 Ark. L. Rev. 304, 318 (1965).

We have only Colonel Hampton's testimony on the point. The day of the accident was also his first day as an employee of a collection agency, on a commission basis. He had no record of past earnings in that job

and made no effort to show what others were earning in a similar occupation. On direct examination he agreed with his attorney's statement that he was "on commission" with a $400 monthly drawing account. Most of his pertinent testimony was educed on cross examination, as follows:

Q. You were to draw four hundred dollars a month in commissions?

A. Yes, sir.

Q. How was that to be drawn?

A. I had a certain schedule. They said they would pay me so much draw. I had so much draw, and if my commissions exceeded two hundred and fifty dollars I would have so much put in what they might call a sinking fund. Then if my commissions didn't equal as much as one hundred and twenty-five dollars a week I could draw out of this fund, but at the end it was paid on a percentage basis, rotation basis. I might agree with you that I wouldn't push you or I would give you time to pay the account. You would give me some settlement or a note or something, and that money would go in to the company. It all went in to them. That was the agreement when I signed up. It was contingent on the way I would draw my commission. If I worked I made it, and if I didn't I didn't make it.

Q. You had to pay your own expenses?

A. No, sir, unless I earned less than my commissions.

Absent proof of commissions actually earned in the past, Hampton's burden was that of producing sufficient evidence to enable the jury to determine what he would have earned had he not been hurt. Such a reconstruction of what would have happened is similar to a plaintiff's effort to prove the value of earnings to be lost in the future. There the rule is that the loss must

be shown with reasonable certainty. AMI 2206; *Check v. Meredith,* 243 Ark. 498, 420 S. W. 2d 866 (1967); see also *McCord* v. *Bailey,* 195 Ark. 862, 114 S. W. 2d 840 (1938). A similar standard is fairly applicable here.

We are forced to conclude that the plaintiff failed to sustain his burden of proof. Hampton's testimony about the sinking fund and about his minimum weekly quota was really of no assistance to the jury. The only *facts* known to the jury were that the colonel was employed as a collection agent, on a commission, with a $400 monthly drawing account. Presumably at least part of the drawing account was intended to be used for the payment of expenses, which were not charged to Hampton "unless I earned less than my commissions" (whatever that statement may be taken to mean). There is no definite indication of what Hampton's expenses would have been. He merely said, in describing his disability, that the job required "considerable driving." That he was hurt in Crittenden county, at some distance from his home in Marianna, suggests that his assigned territory was extensive.

Not only was the proof of expenses vague. The jury was given no indication of the total collections that Hampton might expect to make for his employer or of what his commission would be. Upon the record as a whole the jury had no basis, except guesswork, for estimating Hampton's lost earnings. Such a verdict cannot be allowed to stand.

When the only error relates to a separable item of damages, a new trial can sometimes be avoided by the entry of a remittitur. *St. Louis, I. M. & S. Ry.* v. *Bird,* 106 Ark. 177, 153 S. W. 104 (1913). Such a remittitur is fixed by the highest estimate of the element of damage affected by the error. *Surridge* v. *Ellis,* 117 Ark. 223, 174 S. W. 537 (1915). Here that maximum would be earnings of $400 a month for thirteen and three-quarter months, or a total of $5,500. If by any chance the appellee wishes

to remit that amount within seventeen days, the rest of the judgment will be affirmed. Otherwise the cause must be remanded for a new trial.

HARRIS, C. J., AND JONES, J., dissent.