HARRY A. BELFORD *v.* BRENDA HUMPHREY

5-4480                                                  424 S. W. 2d 526

Opinion delivered February 26, 1968
[Rehearing denied March 18, 1968.]

Rose, Meek, House, Barron, Nash & Williamson, and *John D. Eldridge,* for appellant.

*Fletcher Long,* for appellee.

CONLEY BYRD, Justice. This appeal by Harry A. Belford puts before us the issues of the permanency of the injuries of appellee Brenda Humphrey and the excessiveness of the $78,000 jury verdict in her favor. The litigation stems from an automobile collision in which Belford's vehicle struck the rear of appellee's "Thunderbird" with such force that both sides were "bucked out" and the left front seat was broken.

Following the collision on June 3, 1965, appellee, age 25, was hospitalized under the care of Dr. H. G. Lanford until June 10, 1965. During hospitalization she was treated for a whiplash injury of her cervical spine. Her treatment consisted of cervical traction, muscle relaxants and medication for pain. She was removed from Crittenden Memorial Hospital in West Memphis, Arkansas, to her home in McCrory by ambulance.

The day following her return from the hospital the pain was so unbearable that she screamed when her bed was moved. A local doctor was called about 3:00 to 4:00 a.m., who gave her a shot to relieve the pain. The pain continued to such an extent that she was returned to the hospital on June 17, 1965, where she again was put in traction and given muscle relaxants and pain medicine. She was discharged on July 1, 1965. At the time of her August 26, 1965, visit to the doctor, she was unable to return to work. Dr. Lanford testified that at that time she had a severe whiplash injury and he did not know what would be the outcome. For eight to ten months thereafter she slept in traction. Exercise and weight lifting were subsequently prescribed. At the

time of trial on January 30, 1967, appellee still complained of pain when she bent her neck forward as one does when ironing and typing, she was still on muscle relaxants, and had an appointment with her doctor some two weeks hence. Hospital and medical bills had accumulated in excess of $1,426.63 and were still accruing.

Testimony showed that appellee had been self-sustaining from her high school graduation in 1959 to the date of the accident. At that time she had been working at the General Electric plant in Memphis, Tennessee, where she earned in excess of $300 per month. Her job had required the bending of her neck to look down while testing light bulbs. She was in touch with General Electric for a year after the accident before they mailed her her separation papers.

When the doctor advised appellee that she could try to work, some three months before trial, she applied for employment at the Little Rock employment office, Timex, the Little Rock Police Department as a meter maid, the Newport Telephone Company, and the Augusta Corporation. Each time application was made she was asked to state why she had left her last job and to give her physical history. By trial date, she had been unable to obtain employment although she understood she was first up for the next available meter maid job with the Little Rock Police Department at a monthly salary of $235.

Prior to the accident appellee enjoyed bowling, but this she cannot do any more. She also liked to hunt and fish, but is unable to do this without pain.

Dr. H. G. Lanford testified that appellee had had pain during the entire course of her treatment. This he based on both subjective and objective symptoms, so that he did not rely solely upon her credibility to determine that she had pain. Her first real improvement was in November 1966 and resulted from exercises de-

signed to strengthen her neck muscles. Dr. Lanford testified that he had examined her in January 1967 before the trial and that she had suffered a personality change; also, that with the history of her injury and the long recovery period involved, she would have difficulty in finding employment anywhere a physical examination was given. On cross examination he stated emphatically that she would have prolonged pain for several hours when she held her head forward for any period of time. The doctor believed appellee incapable of any work involving the bending of her neck forward or backward.

Appellant introduced evidence to the contrary, but because review of a jury finding is limited to the substantial evidence rule, we have stated the facts in the light most favorable to appellee.

The issue of permanency arises through an objection to the instructions on the issue of damages, the mortality table and present value. Appellant points to our cases such as *St. Louis, I. M. & S. Ry. Co.* v. *Bird,* 106 Ark. 177, 153 S. W. 104 (1913). and *Midwest Bus Lines* v. *Williams,* 243 Ark. 854, 422 S. W. 2d 869 (1968), and argues that the issue of permanency should not have been submitted to the jury in the absence of expert medical testimony that the injuries were permanent to a reasonable degree of certainty.

Appellee argues that the injury here was such that a permissible inference of permanency was demonstrated by the evidence. See *Missouri Pac. Transp. Co.* v. *Mitchell,* 199 Ark. 1045, 137 S. W. 2d 242 (1940), and *Bailey* v. *Bradford,* 244 Ark. 8, 423 S. W. 2d 565 (1968).

Where the injury is only subjective in character and of such a nature that laymen cannot with reasonable certainty know whether there will be future pain and suffering, it is obvious the courts must demand expert opinion testimony. On the other hand, when the injury is objective in nature, such as when a limb is severed,

it is obvious that expert opinion testimony is not a prerequisite to submission of the issue of permanency to the jury. See 31 Am. Jur. 2d, Expert and Opinion Evidence, § 119. Between the two extremes are gray areas in which the issue of permanency becomes a matter of judgment.

Here the injuries had persisted for some twenty months; appellee had suffered a personality change; she was unable to perform certain movements without pain; she will have difficulty obtaining employment where a physical examination is required; and she was still taking eight muscle relaxant pills per day at time of trial. After reviewing the record, we are unable to say that it was error to submit the issue of permanency to the jury.

Appellant also complains of error in submitting to the jury the issues of diminished earning capacity in the future and future medical expenses. We hold these contentions to be without merit. The record shows that appellee had sought employment before the trial date and that if she had been able to find employment within her capabilities, the remuneration would not have been equal to her income at the time of her injury. Regarding future medical expense, appellee was and had been continuously under the doctor's treatment—in fact she had an appointment with him two weeks following the trial. Since the jury had before it the medical expenses that had accrued, it would not have been pure speculation for the jury to calculate the future expense upon the history of the expense to the date of trial.

Appellant filed two motions for new trial. The first, in addition to the issues above discussed, raised the issue of excessiveness of the verdict. The second alleged that subsequent to the trial appellee, on March 1, 1967, went to work as a meter maid at the monthly rate of $235, and that she had not missed any work up to and including July 4, 1967. Except for the excessiveness of the verdict, hereinafter discussed, we hold that the trial

court did not abuse its discretion in overruling the motions for new trial.

On the excessive verdict issue, the record shows special damages in the nature of medical expense and lost wages in excess of $8,000. In addition appellee suffered the injuries heretofore set forth. After reviewing the record in detail, we are unable to find sufficient evidence to sustain a verdict in excess of $58,000. If appellee will enter a remittitur for $20,000 within seventeen juridical days, the judgment will be affirmed. Otherwise it will be reversed and remanded for new trial.

BROWN, FOGLEMAN AND JONES, JJ., dissent.

LYLE BROWN, Justice, dissenting. The trial court permitted the jury to award damages based on permanent injuries and to compensate for future medical expenses. I would hold the submission of these issues to have been erroneous.

Where an injury per se does not show permanency to a reasonable degree of medical certainty, and where there is absent a medical opinion reasonably indicating permanency, the question of permanency should not be submitted to the jury. See *St. L. I. M. & S. Ry. Co.* v. *Bird*, 106 Ark. 177, 153 S. W. 104 (1913); *Midwest Bus Lines* v. *Williams*, 243 Ark. 854; and 85 ALR 1022. The recited requirements are fully supported by a line of our holdings cited in the case of *Keaton* v. *McCook*, 210 F. Supp. 226 (1962); that is not to say that the certainty must be absolute, but it must preclude mere conjecture or even probability.

Miss Humphrey suffered a whiplash injury to the neck. Her doctor testified that in 1965 he found a muscle spasm which could not be faked. At that time it was his opinion that as a result of the injury she could turn her head to the right only partially and that the movement of the head upward was then limited by approximately fifteen per cent. Then upon examination in 1966,

he was "delighted" with her "dramatic changes for the better" and concluded that prescribed exercises resulted "in improvement." Later in his testimony he made this statement: "I think this girl will have difficulty finding employment anywhere a physical examination is given". Yet the doctor does not say just how long that situation, in his opinion, would continue.

Miss Humphrey testified, describing her difficulty in neck movements and headaches. Her visits to the doctor have been virtually discontinued. She takes some type of tablets to relieve her muscle spasms and headaches. In her last two job applications she has stated that she had no physical limitations.

Appellant offered the testimony of an orthopedic surgeon who had been called upon to examine Miss Humphrey for the Social Security Administration. The first examination was in 1965 and the only other examination was in 1967, the latter apparently being for the purpose of testifying. It was his finding that she had sustained a whiplash injury and had received excellent treatment. He found no permanent injury.

Miss Humphrey's doctor was conceded to be an outstanding surgeon. *He was not asked to give a medical opinion as to the permanency of the alleged injury.* That fact is particularly significant in view of the unqualified opinion of appellant's doctor that there was no permanency.

The conclusion of this dissent is not out of harmony with our recent holding in *Bailey* v. *Bradford,* 244 Ark. 8, 423 S. W. 2d 565 (opinion of February 5, 1968). There the jury had only lay testimony with which to evaluate permanency. However, the objective evidence of appellee's injuries in that case, together with medical testimony of severe brain damage, were sufficient to indicate the permanency of her injuries.

To permit appellee to recover for future medical expenses presents a still more serious error. The only testimony in that respect is that she was taking pain tablets, the cost of which is not found in the record. There was no medical prediction that she would ever have to undergo future surgery or hospitalization.

I would reverse and remand for new trial.

FOGLEMAN and JONES, JJ., join in this dissent.